UNITED STATES v. CANTRALL et al.

(Circuit Court, D. Oregon. February 21, 1910.)

No. 3,511.

**1.** WATERS AND WATER COURSES (§ 222*)—RECLAMATION ACT—SECRETARY OF INTERIOR—AUTHORITY.

Reclamation Act June 17, 1902, c. 1093, § 4, 32 Stat. 389 (U. S. Comp. St. Supp. 1909, p. 598), provides for the establishment of reclamation projects to be paid for by entrymen of the land, and section 6 authorizes and directs the Secretary of the Interior to use the reclamation fund for the operation and maintenance of reservoirs and works constructed under the act, provided that, when the payments are made for the major portion of the lands irrigated from the waters of any of the works, then the management and operation thereof shall pass to the owners of the land to be maintained at their expense, provided that the title shall remain in the government until otherwise provided. *Held*, that the Secretary of the Interior, being authorized to tax and determine the charges, was authorized to divide the same into two parts, one for construction, and the other for maintenance and operation; and hence he was authorized to impose reasonable assessments on land irrigated prior to the time when payment of the major portion of the cost of construction had been made, and the works passed under management of the owners of the irrigated land.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 222.*]

**2.** WATERS AND WATER COURSES (§ 222*)—IRRIGATION PROJECT—CHARGES LEVIED BY SECRETARY OF INTERIOR.

Where, by a contract between the United States and landowners tributary to a federal irrigation system, such landowners agreed to pay to the United States the charges duly levied against their lands for the construction and maintenance of the system, they were only liable for such reasonable charges as the government was authorized to collect, proportionate to their share of the cost of maintaining and operating the system, and not such as might be arbitrarily fixed in advance by such secretary or other governmental officer.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 222.*]

**3.** EVIDENCE (§ 441*)—WRITTEN CONTRACT—PAROL NEGOTIATIONS.

All oral negotiations preceding a written contract are conclusively presumed to be embodied in the writing, especially where the contract shows on its face that it was not to become binding until approved by the Secretary of the Interior, after which approval statements and representations made by the government's local engineer as to the construction of the contract or as to defendant's liability thereunder were immaterial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2030; Dec. Dig. § 441.*]

**4.** UNITED STATES (§ 130*)—SET-OFF AGAINST UNITED STATES—STATUTES.

Since a set-off is a creation of statute, and does not exist at common law, if it is available at all in an action brought by the United States, it

must appear that the claim has been presented to an accounting officer of the treasury and disallowed, as required by Rev. St. § 951 (U. S. Comp. St. 1901, p. 695), or that it is within one of the exceptions specified in such section.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 118; Dec. Dig. § 130.*]

Action by the United States against Roscoe E. Cantrall and others. On plaintiffs' motion to strike out portions of the answer and on demurrer to the second defense. Demurrer and motion to strike out sustained.

John McCourt, U. S. Atty.
Charles R. Hardy, for defendants.

BEAN, District Judge. This is an action brought by the United States against Roscoe E. Cantrall, Nanna M. Cantrall, and Cordelia L. Ankeny, on a contract made and entered into by and between the plaintiff and the defendants and one Henry E. Ankeny, now deceased.

It appears from the complaint that on the 15th day of May, 1905, the Secretary of the Interior, by virtue of the authority conferred upon him by the national reclamation act, determined to be practicable an irrigation project in Klamath county, proposing thereby to reclaim and irrigate about 200,000 acres of land, and that at the time of the commencement of this action, May, 1909, approximately 37 per cent. of the project had been completed. Within the boundaries of the proposed project, for some years prior to the adoption thereof, the Klamath Falls Irrigation Company, a private corporation, had been engaged in irrigating the lands of the defendants and others. In order to carry out the proposed project, and to protect the vested rights of the defendants and other persons interested in the Klamath Falls Irrigation Company, the Secretary of the Interior on or about the 28th day of April, 1905, entered into a preliminary contract with the corporation, by which it was stipulated that, in case the project should subsequently be approved, the government would purchase its property and rights for the sum of $50,000, and assume and take its place in furnishing water for irrigation to the lands of the defendants and other persons theretofore served by it, and that at the proper time the United States would issue to such parties evidence in due form of the right to the use of water upon certain described lands, amounting in the aggregate to about 1,700 acres, from the irrigation system to be constructed by the United States "subject to all the provisions of the reclamation act, excepting the charges for the cost of constructing" and "the requirements concerning residence upon the lands." The parties to take such water rights "subject to all the other provisions of the reclamation act, including the obligations to pay the charges duly levied against such lands for the management and operation of the irrigation system," and that, after receiving title to and control of the ditch of the Klamath Falls Irrigation Company, the United States was to deliver each year water for irrigation during the usual irrigation season to the lands described in such agreement,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in accordance with the terms thereof. The agreement was not to become binding upon the United States until approved by the Secretary of the Interior. It was conditionally approved by that officer on April 28, 1905. On the 10th day of April, 1906, the defendants and Henry E. Ankeny, who were the principal stockholders of the Klamath Falls Irrigation Company, executed a written instrument, under their hands and seals, whereby they ratified such contract and assented to the terms and conditions thereof, and in which they expressly stipulated and agreed "to pay the charges duly levied against such lands for the management and operation of the irrigation system" to be constructed by the United States, but not the charges for the cost of constructing such system. On July 28, 1906, in pursuance of the contracts referred to, the Klamath Falls Irrigation Company duly conveyed and transferred to the United States all of its irrigation ditches, canals, and water rights, and the United States accepted such deed and paid the stipulated consideration therefor. Prior to May, 1907, the Klamath project was so far completed by the United States that it was enabled to deliver water for the irrigation of the lands of the defendants, together with a large quantity of other lands, and, at the request of the defendants, did deliver during the irrigation season of 1907 water for irrigating 1,000 acres of the lands mentioned in the contracts, for which the Secretary of the Interior made and levied a charge of $1.50 per acre for the land so irrigated, which was reasonable and proportional cost chargeable to such lands for maintaining and operating the system during such year. Demand was made of the defendants for the payment of $1,500 in accordance with such levy, and payment thereof refused.

Defendants have filed an answer in which they admit the making of the contracts as set out in the complaint, but deny the other material allegations thereof, and for a further and separate answer and defense plead, in substance: First. That one T. H. Humphreys was the agent and representative of the plaintiff in the making of the contracts referred to in the complaint, and that he represented to the defendants that no charge could or would be made for the operation or maintenance of the irrigation system while the same was in course of construction and before the operation thereof passed to the owners of the lands irrigated thereby, in accordance with the provisions of section 6 of the reclamation act (Act June 17, 1902, c. 1093, 32 Stat. 389 [U. S. Comp. St. Supp. 1909, p. 599]) and it was so understood and agreed between the parties to such contract at the time it was made and entered into. Second. That no charge was made for the operation and maintenance of the system during the year 1907 to any other person using water therefrom except the defendants, but that a charge of $1.50 per acre was made against all other lands using water from such system as a water rental, and that the charge made against the defendants was and is unlawful and contrary to the terms of the contracts and the representations of Humphreys, and that, by reason thereof, the plaintiff should not be heard to say that the defendants are liable for the same, and are and should be held to be estopped from saying that the defendants should pay the same or any

part thereof to the plaintiff. For a further and separate defense, and by way of counterclaim, it is alleged that in the spring of 1908, and before the irrigation season of that year, the plaintiff by its officers and agents in charge and control of the irrigation system wrongfully and unlawfully demanded of the defendants the sum of $1,500 in advance for the year 1908 as a pretended charge for maintenance and operation at the rate of $1.50 per acre, and contrary to the terms and conditions of the contracts between the plaintiff and the defendants; that the defendant refused to pay such sum, whereupon the plaintiff, by its agents and officers, wrongfully and unlawfully and contrary to the terms and conditions of the contracts, shut off the water from the lands of the defendants, and refused to permit them to use water from such system to irrigate their lands for the season of 1908, unless they would pay in advance the sum of $1,500 for said pretended claim for expenses and cost of maintenance, and thereupon, in order to save their crops, they were forced to yield to said demand, and did on or about the ———— day of May, 1908, pay the fiscal agent of the plaintiff the said sum of $1,500 under protest, in advance, for the pretended claim for expenses of maintenance and operation for the year 1908; that said sum was wrongfully and unlawfully extorted from defendants, and paid by them under protest, for which they demand judgment against the plaintiff, together with interest at the rate of 6 per cent. per annum from the date of the filing of the answer until paid.

The plaintiff moved to strike out that portion of the answer in which the statements and representations of Humphreys are set out, and demurred to the second defense on the ground that the facts therein stated constitute no defense or set-off to this action.

When the matter came on for hearing, the defendants challenged the sufficiency of the complaint on the ground that it does not state facts sufficient to constitute a cause of action, for the reason that in the contracts sued on it is stipulated that the defendant shall only pay the charges duly levied against them for the maintenance and operation of the system, and that, under the national reclamation act, the Secretary of the Interior has no power or authority to levy or collect such charges during the time the system is in process of construction, and before its management passes to the owners of the lands irrigated thereby. This presents the first question for consideration.

By section 4 of the national reclamation act (32 St. at Large, 389) it is provided:

"That upon the determination by the Secretary of the Interior that any irrigation project is practicable, he may cause to be let contracts for the construction of the same, in such portions or sections as it may be practicable to construct and complete as parts of the whole project, providing the necessary funds for such portions or sections are available in the Reclamation fund, and thereupon he shall give public notice of the lands irrigable under such project, and limit of area per entry, which limit shall represent the acreage, which, in the opinion of the Secretary, may be reasonably required for the support of a family upon the lands in question; also of the charges which shall be made per acre, upon the said entries and upon lands in private ownership which may be irrigated by the waters of the said irrigation project, and the number of annual installments, not exceeding ten, in which such charges shall be paid,

and the time when such payments shall commence. The said charges shall be determined with a view of returning to the reclamation fund the estimated cost of construction of the project, and shall be proportioned equitably."

By section 6 the Secretary is—

"authorized and directed to use the reclamation fund for the operation and maintenance of all reservoirs and irrigation works constructed under the provisions of this act: Provided that when the payments required by this act are made for the major portion of the lands irrigated from the waters of any of the works herein provided for, then the management and operation of such irrigation works shall pass to the owners of the lands irrigated thereby, to be maintained at their expense under such form of organization and under such rules and regulations as may be acceptable to the Secretary of the Interior: Provided, that the title to and the management and operation of the reservoirs and works necessary for their protection and operation shall remain in the government until otherwise provided by Congress."

The argument is that section 6 requires the cost of the maintenance and operation of all reservoirs and irrigation works constructed under the provisions of the act to be paid from the reclamation fund, until the management thereof shall pass to the owners of the lands irrigated thereby, and that the Secretary is not authorized to make any charge against the land irrigated for the maintenance and operation of any portion of the system which may be completed and used for irrigation purposes prior to that time. This I take to be an unwarranted interpretation of the act. It provides that, after a contract is made for the construction of the irrigation system or some portion thereof, the Secretary of the Interior shall give public notice of the lands irrigable under the system, the limit of the area per entry, and the charges which shall be made upon such entries, and the lands in private ownership which may be irrigated therefrom.

There is no express restriction upon the authority of the Secretary in making such charges upon entries and lands in private ownership within the meaning of the law, except that they shall be determined with a view of returning to the "reclamation fund the entire cost of construction," and that they "shall be apportioned equitably." The matter is left entirely to the judgment of that officer, and he may fix the charges at such reasonable sums as he may deem advisable and necessary to carry out the provisions of the act, and to return to the reclamation fund the estimated cost of the project; the object being to keep the fund intact, and to make each project pay for itself. It is manifest that Congress did not intend that a completed portion of the system should not be used for irrigation prior to the time the required payments are made for the major portions of the lands within the project, or that water should be furnished by the government free of cost to the settlers. The purpose of the act is to encourage the settlement and cultivation of arid public lands, and it contemplates that such lands may be entered upon as soon as the irrigation system is so far completed that water may be furnished thereby for irrigation purposes. When, therefore, it empowered the Secretary of the Interior to fix and determine the charges against the land, it must have intended that he should thereby cover the cost of maintenance and operation while in control of the United States, as well as construction. I cannot find anything in the language which makes it

unlawful for the Secretary to divide the charges made by him against the land into two parts, one for construction and the other for maintenance and operation. It is true he is authorized by section 6 to use the reclamation fund for the operation and maintenance of the system until the management thereof passes to the landowners, but he is at the same time required by section 4 to levy such a charge against the land as will return to the fund the estimated cost thereof. Unless, therefore, he has authority to cover the cost of operation and maintenance by charge upon the lands, the system must lie dormant and unused until the major portion of the entrymen shall pay the charges for cost of construction in full, or in time the fund will be exhausted and depleted, a result evidently not intended by Congress. Such a construction of the act is not required by its language, and would be inconsistent with its general intent and purposes.

The objection to the complaint is not well taken. It does not follow, however, that the maintenance charges fixed by the Secretary of the Interior are conclusive as against the defendants. This action is on an express contract entered into between them and the government. The liability and duty of both parties to the agreement are measured by the terms of the contract. By it the defendants agreed to pay to the United States the charges duly levied against their lands for the purposes stated. This necessarily means charges which the government is authorized to collect, and such as are reasonable, and the proportionate share of the cost of maintaining and operating the system, properly chargeable to their lands, and not such as may be arbitrarily fixed in advance by the other contracting party.

The motion to strike out parts of the answer should be sustained. It is a rule of law that all oral negotiations preceding a written contract are conclusively presumed to be embodied in the writing itself, and especially is this true in this case where the contract shows on its face that it was not to become binding until approved by the Secretary of the Interior. It was the agreement as finally approved by that officer that embodied the terms of the contract between the government and the defendants, and any statements or representations made by the local engineer as to its construction, or as to the liability of the defendants thereunder, were a mere matter of opinion, and not binding upon the complainant.

The demurrer to the second separate defense must also be sustained. It will be noted that the matter therein set out is pleaded in the form of a set-off or counterclaim with demand for judgment against the United States. Section 951, Rev. St. (U. S. Comp. St. 1901, p. 695), provides that:

"In suits brought by the United States against individuals, no claim for a credit shall be admitted, upon trial except such as appear, to have been presented to the accounting officers of the treasury, for their examination, and to have been by them disallowed, in whole or in part, unless it is proved to the satisfaction of the court that the defendant is at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury by absence from the United States or by some unavoidable accident."

. A set-off is a creation of the statute, and did not exist at common law. In an action brought by the United States, if it exists at all,

it is conferred by St., § 951, and, before it can be asserted in a court, it must appear that the claim has been presented to an accounting officer of the Treasury and disallowed, or the pleadings must bring the case within some of the exceptions specified in the statute. Schaumburg v. U. S., 103 U. S. 667, 26 L. Ed. 599; U. S. v. Eckford, 73 U. S. 481, 18 L. Ed. 920; Reeside v. Secy. Treasury of U. S., 11 Howard, 272, 13 L. Ed. 693; U. S. v. Patterson (C. C.) 91 Fed. 854; Yates v. U. S., 90 Fed. 57, 32 C. C. A. 507.