### BAKER v. SWIGART et al.

(District Court, E. D. Washington, S. D. February 26, 1912.)

### No. 76.

**1. WATERS AND WATER COURSES (§ 231*)—RECLAMATION ACT—AUTHORITY OF SECRETARY OF INTERIOR.**

Under Reclamation Act June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1911, p. 662), which sets apart the proceeds of public lands in certain states and territories as a reclamation fund, to be used by the Secretary of the Interior in constructing, maintaining, and operating irrigation projects, the estimated cost of which is to be charged upon the lands irrigated and returned to the fund in annual installments, and which further provides that, when such payments have been made for the major portion of the lands irrigated from any works, the management and operation of the same shall pass to the owners of the lands, the Secretary has authority to levy and collect assessments on the lands to defray the cost of maintenance prior to that time; it being the intention of the act that the fund should be fully reimbursed for expenditures made therefrom and kept intact.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 320; Dec. Dig. § 231.*]

**2. UNITED STATES (§ 125*)—JURISDICTION—SUITS AGAINST UNITED STATES.**

A suit against government officers to restrain acts claimed to be without authority of law, by which complainant will be deprived of rights accorded to him by the law, is not one against the United States.

[Ed. Note.—For other cases, see United States, Cent. Dig. §§ 113, 114; Dec. Dig. § 125.*]

In Equity. Suit by D. P. Baker against Charles H. Swigart, E. McColloh, and R. K. Tiffany. Decree for defendants.

Hughes, McMicken, Dovell & Ramsey, for complainant.

Oscar Cain, U. S. Atty., and E. C. Macdonald, Asst. U. S. Atty., for respondents.

RUDKIN, District Judge. [1] Section 1 of Act Cong. June 17, 1902, c. 1093, 32 Stat. 388, commonly known as the "Reclamation Act," provides that all moneys received from the sale and disposal of public lands in certain states and territories, beginning with the fiscal year ending June 30, 1901, including the surplus of fees and commissions in excess of allowances to registers and receivers, and excepting the 5 per centum of the proceeds of the sales of public lands in the above states set aside by law for educational and other purposes, shall be and the same are hereby reserved, set aside, and appropriated as a special fund in the treasury to be known as the "reclamation fund," "to be used in the examination and survey for and the con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

struction and maintenance of irrigation works for the storage, diversion, and development of waters for the reclamation of arid and semiarid lands in the said states and territories, and for the payment of all other expenditures provided for in this act."

Section 4 provides:

"That upon the determination by the Secretary of the Interior that any irrigation project is practicable, he may cause to be let contracts for the construction of the same, in such portions or sections as it may be practicable to construct and complete as parts of a whole project, provided the necessary funds for such portions or sections are available in the reclamation fund, and thereupon he shall give public notice of the lands irrigable under such project, and limit of area per entry, which limit shall represent the acreage which, in the opinion of the Secretary, may be reasonably required for the support of a family upon the lands in question; also of the charges which shall be made per acre upon the said entries, and upon lands in private ownership which may be irrigated by the waters of the said irrigation project, and the number of annual installments not exceeding ten, in which such charges shall be paid and the time when such payments shall commence. The said charges shall be determined with a view of returning to the reclamation fund the estimated cost of construction of the project, and shall be apportioned equitably."

Section 6 of the same act provides:

"That the Secretary of the Interior is hereby authorized and directed to use the reclamation fund for the operation and maintenance of all reservoirs and irrigation works constructed under the provisions of this act: Provided, that when the payments required by this act are made for the major portion of the lands irrigated from the waters of any of the works herein provided for, then the management and operation of such irrigation works shall pass to the owners of the lands irrigated thereby, to be maintained at their expense under such form of organization and under such rules and regulations as may be acceptable to the Secretary of the Interior: Provided, that the title to and the management and operation of the reservoirs and the works necessary for their protection and operation shall remain in the government until otherwise provided by Congress."

The sole question presented by the bill and answer in this case is, Has the Secretary of the Interior authority under the act to levy and collect assessments to defray the cost of maintenance of canals before payments have been made for the major portion of the lands irrigated therefrom, and before the management and operation of the irrigation works have passed to the owners of the lands irrigated thereby?

The argument against the authority of the Secretary is based on section 1 of the act, which authorizes the use of the reclamation fund, in the construction and maintenance of irrigation works, on the provision of section 6 which authorizes the Secretary to use the reclamation fund for the operation and maintenance of all reservoirs and irrigation works constructed under the act, and on section 4, which apparently only provides for the return to the reclamation fund of the estimated cost of the construction of the project.

The question thus presented is by no means free from doubt or difficulty. I am convinced that Congress intended that the reclamation fund should remain intact, and that it should not be depleted by defraying the expenses of maintenance or otherwise. At the same time, if this authority exists in the Secretary, it rests in implication only,

and it is unfortunate indeed that so vast a power should have no surer foundation. But the question is not a new one, and does not rest on the language of the act of Congress alone. The Secretary has, for a number of years, both asserted and exercised the authority he now claims with the acquiescence of other departments of the government, and has collected vast sums of money under it. His construction of the act has been approved by the Attorney General (27 Op. Atty. Gen., 360) and by the Circuit Court of Oregon in United States v. Cantrall et al. (C. C.) 176 Fed. 949. The Congress itself has both expressly and impliedly recognized the existence of such authority in many later acts. Act March 6, 1906, c. 518, 34 Stat. 53; Act June 21, 1906, c. 3504, 34 Stat. 327; Act March 1, 1907, c. 2285, 34 Stat. 1037; Act April 30, 1908, c. 153, 35 Stat. 85; Act May 30, 1908, c. 237, 35 Stat. 562; Act March 3, 1909, c. 263, 35 Stat. 798; Act Feb. 21, 1911, c. 141, 36 Stat. 925 (U. S. Comp. St. Supp. 1911, p. 681).

I appreciate the force of the argument that the construction of a legislative act by a subsequent Legislature or by another department of the government is only controlling in doubtful cases, but I am not so far satisfied that the Secretary is acting without warrant or authority of law as to justify a court of first instance at least in denying that authority to him under the circumstances disclosed by this record.

[2] The respondents claim that this is, in effect, a suit against the government. If the position taken by the complainant is sound, and the respondents, without authority of law, are attempting to deprive him of rights accorded to him by the law, the claim that this is a suit against the government is utterly unfounded. United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Belknap v. Schild, 161 U. S. 18, 16 Sup. Ct. 443, 40 L. Ed. 599; Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648.

In view of the conclusion I have reached on the merits of the case, a further discussion of this question becomes unnecessary.

Bill dismissed.