MAGRUDER et al. v. BELLE FOURCHE VALLEY WATER USERS' ASS'N.

(Circuit Court of Appeals, Eighth Circuit. December 8, 1914.)

No. 4150.

*(Syllabus by the Court.)*

1. INJUNCTION ⬅114—PARTIES—RECLAMATION ACT.

A corporation with which, as the representative of its shareholders, who are parties accepted by the United States as holders of water rights in a project under Reclamation Act June 17, 1902, c. 1093, 32 Stat. 388 (Comp. St. 1913, §§ 4700–4708), the United States makes a contract for the benefit of such shareholders relative to the supply of water to and the dues to be paid by the shareholders, and which covenants in the contract to collect dues for the United States and guarantees the payment

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thereof, is a proper party plaintiff in a suit to enjoin officers of the United States from collecting unlawful charges from the shareholders, turning the water from their lands, and canceling their water rights and homestead rights because they fail to pay such charges.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. ☞114.]

2. CONSTITUTIONAL LAW ☞67, 72—EXECUTIVE DEPARTMENT—DECISIONS—CONCLUSIVENESS ON COURTS.

The decisions of officers of an executive department of the United States of questions of law are not conclusive upon the courts. It is the function and duty of the officers of the judicial department to exercise their own judgments in the determination of questions whether or not acts of executive officers are authorized by law, even though such officers have already decided them. The questions whether or not the charges alleged to be illegal and the acts and threatened acts of executive officers depriving the shareholders of a water users' association of water and canceling their water rights and homestead rights for failure to pay such charges, are justified by law, are questions of law which a court of equity is empowered to determine in a suit of such an association against such executive officers, although the Secretary of the Interior or other executive officers have already decided them.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 123, 133; Dec. Dig. ☞67, 72.]

3. UNITED STATES ☞125, 127—"SUIT AGAINST UNITED STATES"—INTERFERENCE WITH RIGHTS.

A suit against executive officers of the United States to enjoin them from committing acts unauthorized by or in violation of law, to the irreparable injury of the property rights of the plaintiff, is not a "suit against the United States," nor is it or the injunction sought objectionable, either on the ground that they interfere with the property or the possession of the property of the United States, or on the ground that they compel specific performance of its contracts.

[Ed. Note.—For other cases, see United States, Cent. Dig. §§ 113, 114, 116; Dec. Dig. ☞125, 127.]

4. EQUITY ☞46—RIGHT TO REMEDY—REMEDY AT LAW.

The remedy at law which will preclude a suit in equity must be as prompt, efficient, and adequate as the remedy in equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159–163; Dec. Dig. ☞46.]

5. APPEAL AND ERROR ☞954—INJUNCTION ☞135, 161—INTERLOCUTORY INJUNCTION—DISCRETION—APPEAL.

The granting or dissolution of an interlocutory injunction is intrusted to the discretion of the court of original jurisdiction, not to the discretion of the appellate court.

In the absence of a violation of the principles and rules of equity established for the guidance of the court of original jurisdiction, the action of that court in such interlocutory matters must be sustained, unless there is clear proof of an abuse of its discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3818–3821; Dec. Dig. ☞954; Injunction, Cent. Dig. §§ 304, 347; Dec. Dig. ☞135, 161.]

6. INJUNCTION ☞136 — INTERLOCUTORY INJUNCTION — GROUNDS — MAINTENANCE OF STATUS.

An interlocutory injunction to maintain the existing situation may properly issue, whenever the questions of law or fact to be ultimately determined in the suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss

or inconvenience to the opposing party will be comparatively small if it is granted, and may be indemnified by a proper bond.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig ☞136.]

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by the Belle Fourche Valley Water Users' Association against Frank C. Magruder and others. From an order refusing to set aside a restraining order and granting an interlocutory injunction, defendants appeal. Affirmed.

Ethelbert Ward, of Denver, Colo. (Robert P. Stewart, U. S. Atty., of Deadwood, S. D., and A. R. Honnold, of Denver, Colo., on the brief), for appellants.

Chambers Kellar, of Lead, S. D. (O. E. Farnham, of Newell, S. D., and James G. Stanley, of Lead, S. D., on the brief), for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The appellant Frank C. Magruder is the manager of the Belle Fourche project and the appellant R. F. Walter was the project engineer and is the supervising engineer. They were defendants below, and the plaintiff was the Belle Fourche Valley Water Users' Association, a corporation organized under the laws of South Dakota to represent and act for the holders of water rights in the project, to collect the lawful dues from them, and to guarantee the payment of these dues. The Belle Fourche project is a project for the storage of water and the irrigation of land under the Reclamation Act of June 17, 1902, and the acts amendatory thereof. 32 Stat. p. 388, c. 1093. This is an appeal from an order refusing to set aside a restraining order and granting an interlocutory injunction against the defendants, forbidding them to exact from holders of water rights in the project charges alleged to be illegal, and from depriving them of the use of the water, of their rights to the water, and of their rights to their land because they failed to pay such charges.

The appellants assail the order on three grounds—that the association is not a proper party plaintiff, that the court below had no power to grant any relief upon the facts stated in the complaint, and that on the evidence the order was erroneous. Counsel for the appellants argue that the association was not a proper party plaintiff, because it had no interest in the suit, and was not one of a numerous class having a common interest in the subject of the suit, within the meaning of rule 38 in equity (198 Fed. xxix, 115 C. C. A. xxix). But rule 37 in equity (198 Fed. xxviii, 115 C. C. A. xxviii) provides that a party with whom and in whose name a contract has been made for the benefit of another may sue in his own name without joining that other. On October 25, 1905, the United States made a contract, with this association, for the benefit of those who held or should there-

after hold water rights under the Belle Fourche project, to the effect, among other things, that only those who were or should become shareholders of the association should be accepted as entrymen of homesteads on the public domain included within the project, or as applicants for rights to the use of water provided for irrigation thereunder, that the payment for water rights to be issued to the shareholders of the association should be divided into not less than 10 equal payments, the first whereof should be payable at the time of the completion of the proposed works, or within a reasonable time thereafter, that the cost thereof should be apportioned equally per acre among those acquiring such rights, that the association would collect and pay to the United States, and did guarantee the payment, of that part of the costs of the works that should be apportioned to each of its shareholders and that parties otherwise eligible might, on the designation of the Secretary of the Interior, become members of the association. In the rules and regulations promulgated by the Secretary through the Director of the United States Reclamation Service we read:

"The execution of the contract between the water users' association and the Secretary of the Interior may be regarded as the completion of the organization of the water users' association. * * * The execution of this contract formally fixes the relation of the association to the government as the representative of the water users and as a medium of communication between the water users and the government."

It is to prevent the violation of the law applicable to the construction and execution of the foregoing contract, and the alleged irreparable injury to the shareholders of the plaintiff and to the plaintiff that may result from such violation, that this suit was instituted. The contract was made in the name of the corporation for the benefit of its shareholders, who number about 600, and the association was clearly the proper party plaintiff under rule 37 in equity, and also because, as contractor to collect and as guarantor of the payment of the lawful charges against its shareholders for the cost of the works and the use of the water, and as the holder of the first lien upon the property of these shareholders under Laws S. D. 1909, p. 155, upon their water rights respectively for the repayment of their deferred payments which it should pay, it had a vital interest in preventing the levy or collection of unlawful charges against them, or their deprivation of their water rights or their property because they failed to pay such charges.

Did the amended complaint state facts sufficient to invoke the jurisdiction and power of a court of equity to grant relief? In the discussion of this question the allegations of the complaint must be taken to be true. Material averments of the complaint were that these were the facts:

The shareholders of the plaintiff had applied for water and had been accepted as water users under the Reclamation Act, the contract of October 25, 1905, and written applications in accordance with its terms. They were either the owners of lands whose title had been vested in them, or homesteaders upon public lands irrigable under the project, and the owners of water rights for use upon such lands.

The project was conceived prior to 1905, and since that time the government has been constructing, but has never completed, the works. The contract of 1905 provided that the payments for the water rights to be issued to the shareholders should be divided into not less than 10 equal payments, the first of which should be payable at the time of the completion of the works or within a reasonable time thereafter. Before these works were completed, and for each of the years 1908, 1909, and 1910, the defendants demanded of the shareholders the payment of an installment of $3 per acre of their alleged irrigable land on account of the construction of the works, and the payment of 40 cents per acre of such land on account of the operation and maintenance of the works, and before the works were completed, for each of the years 1910 and 1911, they demanded the payment of $3 per acre of their irrigable land for construction, and 60 cents per acre of such land for operation and maintenance. The lands of the shareholders on account of which these payments were demanded amounted to about 12,000 acres for the year 1908, about 12,000 acres for the year 1909, about 35,000 acres for the year 1910, and about 47,000 acres thereafter. Notwithstanding the demand of these charges, water sufficient to irrigate these lands was not furnished in 1908, 1909, 1910, or 1911. The shareholders occupied these lands, prepared them for crops, and seeded them; but the crops generally failed from lack of water, and the shareholders generally lost much of their labor and expense. The defendants demanded of the shareholders 60 cents per acre of their irrigable land for operation and maintenance for the year 1913. This charge was made up in part of charges for services and other expenses not incurred or made in connection with the Belle Fourche project. Many thousands of dollars had been charged against the shareholders on account of the salaries of a large and expensive administration force annually as a part of these operation and maintenance charges.

The defendants were attempting to collect of the shareholders, as a part of these operation and maintenance charges, about $78,000 as betterments, which were and are in reality a part of the expense of construction, and are included within the $3 per annum per acre for the 10 years, amounting to $30 per acre, to which amount many of the shareholders by their accepted applications limited their liability for the construction of the works. During these years many of the shareholders paid some of the foregoing charges, although they deemed them illegal, because only by such payments could they get water from the project, and they paid each year to get sufficient water to enable them to raise crops. But in the year 1913 many of them had become financially exhausted by repeatedly preparing their land for crops which failed for lack of water, and by their payment to the United States of some of the charges which have been described, and yet many of the charges remained unpaid. Thereupon, after they had prepared their lands for the crop of 1913, and after the water had been turned onto the lands and the crops were growing, the defendants threatened and were about to turn the water from the lands of these shareholders unless they paid the operation and maintenance

charges for 1913, and the defendants further threatened and were about to recommend for cancellation and to cause the cancellation of the homestead entries and the water rights of the shareholders who had not paid all the charges against them, because they had failed to do so. The turning of the water from the lands would have ruined the crops of 1913. The cancellation of the homestead entries and the water rights of the shareholders would have driven them, with their few domestic animals, away from their homes. The relief sought was an injunction against the turning of the water from the lands, against collection of the charges for construction before the completion of the works, against the collection, as operation and maintenance charges, of expenses for betterments, against the collection of operation and maintenance charges for the year 1913, and against the cancellation of the homestead entries and water rights of the shareholders because these various charges have not been paid.

[1] Counsel for the appellants argue that this suit should be dismissed, and the injunction should be dissolved, because the facts which have been recited present no cause of action for any relief in equity. Let us see. The complaint is that the defendants without authority of and in violation of law demand of the holders of water rights charges for construction that are not due, charges for operation and maintenance composed in part of items for betterments and in part of items for expenses not made in connection with the Belle Fourche project for which they are not legally liable, and that the defendants are about to deprive the shareholders of the use of the water and of their water rights and homestead rights because they do not pay these charges. There can be no doubt that these acts and threatened acts of the defendants are and will be, not only unauthorized by, but contrary to, law. But counsel contend, nevertheless, that these facts give a court of equity no jurisdiction to grant any relief to the shareholders or the plaintiff, because the Secretary of the Interior had and exercised the discretion to determine that all these charges and acts were lawful. But the rights to the homesteads and to the water rights of the shareholders were substantial, valuable, and, against all but the Congress of the United States, vested rights. Counsel cite authorities to the effect that the United States may withdraw lands subject to homestead and pre-emption at any time before patent. But that power, whatever its extent, is vested in the Congress of the United States alone, not in the executive officers of the United States. The former may under some circumstances make laws to withdraw such lands from pre-emption or homestead although pre-emption or homestead rights have been initiated. But the officers of the executive department of the government may not. They are subject, not superior, to existing laws, and they may not lawfully destroy or unjustly affect the water rights or homestead rights, or other valuable rights of this nature, in violation or disregard of the laws of the land. Hemmer v. United States, 204 Fed. 898, 904, 123 C. C. A. 194, and cases cited.

[2] It is a question of law whether the proposed destruction of the homestead rights and water rights of the shareholders, and the re-

fusal to permit them to use the waters of the project because they do not pay the charges alleged to be illegal is or is not authorized by law. And a decision of a question of law by the officers of the executive department is never conclusive upon the courts. Wisconsin Central R. R. Co. v. Forsythe, 159 U. S. 46, 61, 15 Sup. Ct. 1020, 40 L. Ed. 71; United States v. Grand Rapids & I. R. Co. (C. C.) 154 Fed. 131, 136; Northern Pacific R. Co. v. Sanders (C. C.) 47 Fed. 604, 609–612.

It is the function and duty of the officers of the judicial department of the United States, a function and duty which they may not renounce, to exercise their own independent judgments in the determination of the questions whether or not acts of executive officers are authorized by law, even though such officers have already decided the questions. Deming v. McClaughry, 113 Fed. 639, 640, 641, 51 C. C. A. 349, 350, 351; Hartman v. Warren, 76 Fed. 157, 162, 22 C. C. A. 30, 36; Webster v. Luther, 163 U. S. 331, 342, 16 Sup. Ct. 963, 41 L. Ed. 179; United States v. Tanner, 147 U. S. 661, 663, 13 Sup. Ct. 436, 37 L. Ed. 321; Merritt v. Cameron, 137 U. S. 542, 11 Sup. Ct. 174, 34 L. Ed. 772; United States v. Graham, 110 U. S. 219, 3 Sup. Ct. 582, 28 L. Ed. 126; Swift Co. v. United States, 105 U. S. 691, 26 L. Ed. 1108. The facts stated in the amended complaint were ample to invoke the jurisdiction of the court below to determine the question whether or not the defendants were authorized by law to collect the charges it was alleged they demanded, and whether or not they were authorized by law to destroy the water rights and homestead rights for the failure of their owners to pay these charges.

[3] Another objection to the complaint is that it evidences a cause of action against the United States. This contention is presented in numerous forms, such as that the defendants are the officers of the United States and their acts are the acts of the United States, that an injunction against their acts would constitute an interference with the use and possession of the property of the United States, the water of its reservoir, and would compel specific performance of its contracts. If the acts of the defendants done and threatened were authorized by law, they might be the acts of the United States against which a court of equity would grant no relief. But if the averments of the complaint are true, and in deciding the question now under consideration they must be assumed to be so, these acts are unauthorized by and contrary to law. They are, therefore, not the acts of the United States, and a suit to enjoin their performance is not a suit against the United States, or a suit to interfere with its property, or a suit to compel specific performance of its contracts. It is a suit to enjoin officers of the United States from unlawfully interfering with and diverting its water from those persons lawfully receiving and entitled to receive it, from unlawfully preventing the United States from discharging its duties and performing its contracts, to the irreparable injury of the plaintiff and its shareholders. That an executive officer is committing or about to commit acts unauthorized by or in violation of law, to the irreparable injury of the property rights of the plaintiff, is a good cause of action against such officer for injunctive relief.

A suit against him for such a cause is neither a suit against the United States nor. is it, or the injunction against such acts of the officer, objectionable either on the ground that it interferes with the property of the United States, or its possession, or compels the specific performance of its contracts by the latter. American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 110, 111, 23 Sup. Ct. 33, 47 L. Ed. 90; Philadelphia Co. v. Stimson, 223 U. S. 605, 619, 620, 32 Sup. Ct. 340, 56 L. Ed. 570; Garfield v. Goldsby, 211 U. S. 249, 261, 29 Sup. Ct. 62, 53 L. Ed. 168; Pennoyer v. McConnaughy, 140 U. S. 10, 12, 17, 11 Sup. Ct. 699, 35 L. Ed. 363; Baker v. Swigart (D. C.) 196 Fed. 569, 571; Id., 199 Fed. 865, 866, 118 C. C. A. 313; Swigart v. Baker, 229 U. S. 187, 192, 33 Sup. Ct. 645, 57 L. Ed. 1143; United States v. Cantrall (C. C.) 176 Fed. 949, 954.

[4] The only other objections to the complaint are that it fails to show that the plaintiff or its shareholders will suffer irreparable injury from the unauthorized and illegal acts of the defendants, and that it does disclose the fact that they have an adequate remedy at law. The remedy at law which counsel assert the plaintiff and its shareholders have consists of actions at law against the United States for the damages they have sustained by their deprivation of water and by the cancellation of the water rights and homestead rights of the shareholders because they failed to pay the illegal charges. But the remedy at law which precludes relief in equity must be as prompt, efficient, and adequate as the remedy in equity. To determine the amounts of the unauthorized charges for operation and maintenance may and probably will require the examination of the accounts of the receipts and disbursements on account of the entire project. To determine the amounts, if any, owing by the shareholders, may and probably will require the examination of the accounts between each of the complaining shareholders and the project. The consideration and settlement of issues dependent upon the taking of accounts composed of many items is one of the great heads of equity jurisprudence, and the probable necessity for such an accounting is in itself sufficient to sustain the jurisdiction of this suit by a court of chancery. Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 13, 14, 76 C. C. A. 516, 521, 522, 8 Ann. Cas. 660. Nor is the remedy of an action, or several actions, at law for damages that will be sustained by the infliction of the wrongs alleged on account of the collection of the unlawful charges, or the destruction of the homestead rights and water rights for a failure to pay them, as prompt, or as efficient, or as adequate, as the prevention by this suit in equity of the collection of the unjust charges and the enforcement of the illegal forfeitures, and the adjudication in this single suit of the legal rights and duties of all the parties and all the shareholders by a court of equity, which, with its power to apply to the questions at issue the learning and experience of its chancellor and of a trained accountant as a master, is so much better equipped than a jury to find and render a just decree upon such issues. The plaintiff and the shareholders have no adequate remedy at law for the wrongs charged in this complaint.

Do the averments of the complaint set forth facts which show an imminent danger of irreparable injury to the plaintiff and its shareholders from the acts of the defendants?. Those averments disclose these facts: The shareholders of the plaintiff are farmers, each with a small number of domestic animals, with modest homes and limited means, trying to cultivate arid lands which they have been induced to occupy by the representations of the defendants that they would be supplied with water from the project to raise crops upon these lands. The United States made a contract with the plaintiff and with many of these shareholders, with all of them who applied for water rights before 1911, that water would be supplied to them in consideration of their agreements to pay for the construction of the works after their completion, and to pay their just share of necessary operation and maintenance charges. The defendants have demanded and collected construction charges not due, operation and maintenance charges unnecessary and unauthorized, and have failed to furnish the requisite water to enable these farmers to raise crops for several years, until some of them are financially exhausted and cannot pay many of the charges, and for their failure so to do the defendants threaten to deprive them of the use of the water and to take steps to destroy their water rights and their homestead rights. The plaintiff, the association, has guaranteed the payment of the legal charges against its shareholders, and has a lien on their rights for such charges that it pays, and it depends upon assessments upon its shareholders to maintain itself and to discharge its duties. The injury to these farmers by their threatened loss of their rights to the water and the land, by turning them and their families with a few domestic animals from their homes and their hopes of a comfortable living therein, may not be measured by the few dollars in damages they might recover after the delay and expense of trials by jury to recover the salable value of their rights to the land and the water which have been depreciated and are being constantly depreciated in value by the alleged acts of the defendants, nor could the damage to the association be fairly measured or recovered by such actions at law. The irreparable injury to the plaintiff and the shareholders by the acts of the defendants is fairly shown by the allegations in the amended complaint, and that complaint presents facts sufficient to state a good cause of action and to invoke the established power of a court of chancery to grant equitable relief. The suit may not be lawfully dismissed on account of the insufficiency of the complaint.

In the consideration of the questions thus far discussed the presumption has necessarily been indulged that the averments of facts in the amended complaint are true. But counsel for the defendants contend that they are not true, and that the evidence before the court below at the time the injunction was granted established this fact so clearly that the court below ought to have dissolved the restraining order and to have denied the injunction. The restraining order was made by the state court on July 19, 1913. On August 6, 1913, after the removal of the case to the court below, the defendants gave notice of a motion to dismiss the suit and to dissolve the order,

which was heard on August 28, 1913, and resulted in an order that the plaintiff might file an amended complaint and the defendants might renew their motion. On October 8, 1913, the amended complaint was filed. Thereupon the defendants renewed their motion, and the plaintiff made a motion for an additional restraining order. These motions were heard on the complaint, the affidavits presented by the respective parties, and the arguments of counsel for three days, commencing about November 30, 1913, and then the court granted the order for the injunction which is challenged by this appeal. The complaint was verified on information and belief by the secretary of the association and by 124 of its shareholders. It was supported by 37 other affidavits. In opposition to this evidence the defendants produced the affidavits of the defendants Magruder and Walter. About 40 exhibits, consisting of the contracts between the United States and the plaintiff, the articles of incorporation of the plaintiff, the forms of the applications used by the shareholders, the circulars and notices respecting the project issued by the Secretary of the Interior and his subordinates, were also introduced in evidence. When the case was heard below the defendants had not answered the complaint, so that as a pleading its allegations stood admitted. The defendants Magruder and Walter, however, in their affidavits denied all the averments of material facts in the complaint which tended to show illegal charges, demands, or threats by them, or any of the defendants, except the allegations of the demand for the payment of construction charges prior to the completion of the project from those who applied for water rights prior to January 24, 1911. They asserted in their affidavits that these shareholders had, by a contract they made through the association with the United States on that date and by their subsequent action, estopped themselves from relying on the contract of October 25, 1905, and their applications regarding this matter. The defendants Magruder and Walter testified that no illegal or excessive charges for operation and maintenance had ever been demanded, either on account of expenses not necessary or relevant to the operation of the Belle Fourche project, or on account of betterments. They denied threats of cancellation of water or homestead rights on account of failure to pay such charges.

In addition to the averments of the amended complaint, the plaintiff produced the affidavit of its secretary that the defendant Magruder had been violating the restraining order by giving notices to shareholders, dated October 25, 1913, that they would suffer the penalty of 1 cent per acre per month for the unpaid operation and maintenance charge for one year after July 21, 1913, of 2 cents per acre per month for two years of such unpaid charges, 3 cents per acre per month for three years of such unpaid charges, and so on; that in compliance with a request for an itemized statement of the expenditures to be charged against the project the defendants furnished one in December, 1911, or January, 1912, which contained an item of $78,000 for betterments; and that the plaintiff had been furnished with statements of expenses incurred in detached offices not

connected with the project. The plaintiff insisted that the provision of the contract of January 24, 1911, between the plaintiff and the United States, which provided for a modification of the stipulation of the contract of October 25, 1905, to the effect that the charges for construction should fall due after the completion of the contract, upon which provision the defendants relied in part for the estoppel they claimed, was unauthorized by the shareholders, and produced a copy of the resolution of the shareholders on which the contract of January 24, 1911, was founded, which seems to give no such authority.

[5] From this brief statement of the course of this suit and of the evidence before the court below, it appears that the order for the injunction was not made hastily, but after elaborate argument and deliberate consideration, that there had been no answer made to the complaint, that there were many issues of fact involved, and their decision was conditioned by conflicting testimony. The discussion which appears in the earlier part of this opinion and the legal questions suggested by the evidence leave no doubt that the questions of law to be ultimately determined in this suit are grave and difficult, and the situation of the parties disclosed by the complaint and the affidavits was such that it might well have appeared to the court below that the injury of the plaintiff and its shareholders would be certain, great, and irreparable if the injunction should not be issued, while the inconvenience and loss to the defendants would be inconsiderable if the injunction was granted. Now the question in this court is not whether or not it would have issued or would issue the injunction upon the evidence before it. The granting or dissolution of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and when that court has not departed from the rules and principles of equity established for its guidance, its orders in this regard may not be reversed by the appellate court without clear proof that it abused its discretion. It is to the discretion of the trial court, not to that of the appellate court, that the law has intrusted the power to grant or dissolve such an injunction, and the question here is: Does the proof clearly establish an abuse of that discretion by the court below? American Grain Separator Co. v. Twin City Separator Co., 202 Fed. 202, 206, 120 C. C. A. 644, 648, and cases there cited.

[6] The controlling reason for the existence of the right to issue an interlocutory injunction is that the court may thereby prevent such a change of the conditions and relations of persons and property during the litigation as may result in irremediable injury to some of the parties before these claims can be investigated and adjudicated. A preliminary injunction maintaining the existing situation may properly issue whenever the questions of law and fact to be ultimately determined in the suit are grave and difficult, and injury to the moving party will be certain, great, and irreparable if the motion is denied, while the loss and inconvenience to the opposing party will be inconsiderable, and may well be indemnified by a proper bond, if the injunction is issued. City of Newton v. Levis, 79 Fed. 715, 718, 25 C. C. A. 161, 164; Love v. Atchison, T. & S. F. Ry. Co., 185 Fed.

321, 332, 107 C. C. A. 403, 414; King Lumber Co. v. Benton, 186 Fed. 458, 459, 108 C. C. A. 436, 437; Carpenter v. Knollwood Cemetery (C. C.) 188 Fed. 856, 857; Henry Gas Co. v. United States, 191 Fed. 132, 136, 111 C. C. A. 612, 616.

A careful reading and thoughtful consideration of the amended complaint, of each of the affidavits and exhibits, in the light of these established principles of equity, have convinced that there is no such proof in this case of an abuse of discretion by the court below by its issue of the injunction as would warrant a reversal of its order.

The order from which the appeal was taken must accordingly be affirmed; and it is so ordered.