## QUINN *v.* CHAPMAN.

IN ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Submitted March 28th, 1884.—Decided April 21st, 1884.

*Public Lands.*

The facts in this case show no reason why the equitable claim of the plaintiff in error to a tract of public land patented to the defendant should prevail over the legal title.

A rule formerly prevailing in the Land Office forbidding the filing of a declaratory statement based upon an alleged right of pre-emption, having its origin subsequent to the commencement of a contest between other parties for the same land, is not ground for rejecting the claim if it is otherwise equitable.

*Mr. Barclay Henley* for plaintiff in error.

*Mr. George A. Nourse* for defendant in error.

Mr. Justice Miller delivered the opinion of the court.

This is a writ of error to the Supreme Court of California.

The foundation of the writ is, that that court, in a controversy which involved the ownership of land, decided, adversely to plaintiff in error, a right or claim set up by him under the laws of the United States concerning the sale and pre-emption of public lands.

The facts on which this question arises are not much con-

troverted in the record, nor are they very complicated; and they are these:

George Hollingsworth made a settlement on the land in question in 1853, and built a house thereon, and died in possession, and was buried there in 1854. His wife and children, all of whom were minors, were then in Missouri, where she died, two years later. At that time the land in question was claimed as part of a Mexican grant to Joseph De Haro. The final survey of the confirmed grant of De Haro was made and filed in the local land office, March 19th, 1868, by which it was ascertained that the land in question was not a part of that grant, and, under the decisions of this court, in the cases of *Newhall* v. *Sanger*, 92 U. S. 761, and *Van Reynegan* v. *Bolton*, 95 U. S. 33, it then became subject to entry and pre-emption for the first time.

Chapman, defendant in error, having been appointed administrator of Hollingsworth, for the purpose of perfecting the title of Hollingsworth's heirs to the land, filed in their name the declaratory statement, which the law requires for pre-emption, on the 8th day of April, just twenty days after the filing of the maps of the survey in the local office, and the next day after his appointment as administrator.

He prosecuted this claim vigorously, his right being contested before the land department by a man named Bepler, who claimed a superior right as pre-emptor, and by the State of California, which claimed it as a part of the school-section grant by act of Congress. He was successful, and by order of the Secretary of the Interior, to whom this case had been appealed, a patent for the land was issued, May 20th, 1872, to the heirs of Hollingsworth. By a conveyance from part of these heirs Chapman became owner of one undivided half of this property, on which he recovered judgment against Quinn in the present action of ejectment.

In that suit Quinn, by way of defence and cross-complaint, set up that he had a superior equity to the land, and prayed a conveyance from Chapman of the legal title. Several matters are set forth as grounds of this equity which are not proved, such as frauds practised by Chapman on the land department,

and that Hollingsworth made his settlement and improvement for his brother, and not for himself.

But the point on which his case turns is his own settlement and efforts to secure a pre-emption right to the same land. It appears that he was a foreigner, and a few days after he had filed his declaration of intention to become a citizen he went upon the land in question, on February 5th, 1869, which is about ten months after Chapman's declaratory statement was filed, and built a house and made other improvements, and within three months thereafter tendered to the register of the land office his declaratory statement to pre-empt the land. This officer refused to receive it, because the contest for the land between Chapman, Bepler, and the State of California, for the right to it, was then far advanced before the register and receiver. On appeal by him to the Commissioner, and thence to the Secretary of the Interior, this action of the register was confirmed.

The only reason given by the department for refusing to permit Quinn to file his declaratory statement was the existence of a rule of its own establishment forbidding the filing of a declaratory statement, based upon an alleged right, having its origin subsequent to the commencement of a contest between other parties for the same land; and the Supreme and inferior courts of California seem to have held that this was a sufficient answer in this case to the claim of plaintiff in error.

We are not prepared to say, however, that if Quinn had a right to make a pre-emption of this land, otherwise valid, the existence of this rule, or its enforcement against him, would defeat that right. The rule, we are told by counsel, has been rescinded, and is of no further consequence except as to its effect upon the present case; and if Quinn had been able to show a superior equity to that which arises out of the patent in this case, we should not feel inclined to reject it because of the rule referred to.

But he has had a hearing before the court in regard to that equity, in which he has been permitted to prove, or, at least, to offer all the evidence he has of such equity, and taking everything he has proved, or offered to prove, we are not able to see

any equity in him superior to that of the heirs of Hollingsworth. Unless he has shown this, the legal title must prevail. . The claimants under the patent are prior to him in every point. Hollingsworth settled on the land, built a house on it, lived on it, and was buried on it, while Quinn was yet a foreigner, and incapable of making a valid claim. It is true that the land not being then open to pre-emption, Hollingsworth gained no legal right to it, but he had a right to believe . that if, when the De Haro claim was surveyed, it was found the land on which he lived was open to pre-emption, he would have the prior right if he came in time. He died in that belief, and the lawful representative of his minor children, at the earliest moment after the land became subject to pre-emption, asserted their right, paid the price of the land, and after an expensive contest with others, received the title from the United States. We do not think their equity in the matter can be disputed.

What is Mr. Quinn's equity? He has never paid a dollar for the land, has received no title nor any recognition of his claim from the government or any one else.

Perceiving that no one was in the actual occupancy of the land, but knowing that the claim of the heirs had been recognized at the land office months before, he hastily prepared himself by declaration of intention to become a citizen, went boldly upon land on which Hollingsworth lived and died, and because there was no one there to defend the possession, built his cabin and asserted a right superior to the heirs of Hollingsworth. · In this also he was a year later than Chapman,· representing the heirs of Hollingsworth. His claim has been denied by the land office from the beginning; he has paid nothing, received no recognition, acquired no vested right.

We see no equity in him equal to that of the heirs of Hollingsworth. There is no justice in taking the title which they had fairly acquired and vesting it in him ; and the judgment of the Supreme Court of California is accordingly

*Affirmed.*