### HENRY GAS CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 3, 1911.)

No. 3,506.

1. INJUNCTION (§§ 135, 136*) — PRELIMINARY INJUNCTION — DISCRETION OF COURT.

The granting or refusal of a preliminary injunction rests in the sound judicial discretion of the court; but it is a cardinal principal of equity jurisprudence that it will not be granted unless the right to it is clear, the injury impending and threatened, so as to be averted only by the preventive process of injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 304–306; Dec. Dig. §§ 135, 136.*]

2. INDIANS (§ 10*)—CHEROKEE NATION—POWER OF CONGRESS OVER DISTRIBUTION OF PROPERTY.

Who shall be enrolled as citizens or members of the Cherokee Nation of Indians and permitted to participate in the distribution of its prop-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erty are matters to be determined by Congress, and its determination of them is not subject to review by the courts.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 10.*]

**3.** APPEAL AND ERROR (§ 874*)—REVIEW OF ORDER GRANTING INJUNCTION—QUESTIONS CONSIDERED.

While the right to a review of an order overruling a demurrer challenging the right of complainant to maintain the suit is waived by the filing of an answer, the right of complainant to maintain the suit is the foundation of its right to an injunction, and may properly be considered on review of an order granting a preliminary injunction.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 874.*]

**4.** INDIANS (§ 13*)—LANDS—RIGHT TO ALLOTMENT.

The due enrollment of a person as a citizen of the Cherokee Nation within the time required by the statute providing for allotments of lands to all so enrolled determines the right of such citizen to an allotment, and the Secretary of the Interior is without power to deprive him of it by delaying beyond a reasonable time to approve the selection made and to issue the proper evidence thereof.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

**5.** INDIANS (§ 13*)—LANDS.

The right of the United States to maintain a suit for the cancellation of a conveyance of land allotted to a Cherokee minor *held* not so clear as to warrant the granting of a preliminary injunction restraining the grantee from removing gas from the land where adequate security was offered by defendant, and especially where it appeared from the proofs that, if the operation of the wells was discontinued, there was danger that during the pendency of the suit the land would be drained of its gas by surrounding wells.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma.

Suit in equity by the United States against the Henry Gas Company. Defendant appeals from an order granting a preliminary injunction. Reversed conditionally.

James A. Veasey (Veasey & Rowland, on the brief), for appellant. William J. Gregg, U. S. Atty.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. Appeal from an order granting an interlocutory injunction restraining the appellant from drilling for or removing any natural gas or oil from certain lands described in the bill, and from selling or exercising any control over said land.

The bill alleges, in substance, that by virtue of Act Cong. June 28, 1898, c. 517, 30 Stat. 495, and the acts amendatory thereof, and particularly Act July 1, 1902, c. 1375, 32 Stat. 716, ratified by the Cherokee Nation August 7, 1902, the complainant assumed and undertook the duty of allotting in severalty to the heirs, members, and enrolled citizens of the Cherokee Nation or Tribe of Indians, the allotable lands belonging to said tribe; that the work of allotting said lands is still in progress, and by virtue of complainant's rights and duty as a sovereign, and governing power of said tribe of Indians and for the

purpose of discharging its full duty and obligation to said tribe in relation to the allotment of its lands, it brings this bill in its own behalf and as guardian of the property of said Cherokee Tribe of Indians.

It is then alleged: That on June 14, 1906, there was presented to the Commission to the Five Civilized Tribes for enrollment under the provisions of section 2 of the act of Congress, approved April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 137), the name of Anna G. McNabb, a minor of Cherokee blood who was born August 9, 1903. That the enrollment of said minor was thereupon made, and on January 24, 1907, approved by the Secretary of the Interior, and her name placed opposite roll No. 2723 of the census roll of the new born members of said Cherokee Nation or Tribe of Indians. That on February 6, 1907, an application was made on behalf of said minor by Mary E. McNabb, her mother, "for the following described lands" (describing the lands involved in this suit, being 50 acres in Washington county, Okl., formerly Indian Territory) as and for a part of her allotment in severalty of the land of the Cherokee Nation, which said selection was tentatively allowed in behalf of said minor; but that no certificate of allotment or patent was ever issued to her, and that said lands are a part of the public domain of said Cherokee Nation and subject to the control of the complainant in the manner provided by the several acts of Congress. That on May 20, 1910, one Sanford McNabb, representing himself to be the legal guardian of said minor, Anna G. McNabb, presented to the county court of Washington county, Okl., a petition praying for an order authorizing him as such guardian to sell at private sale the lands so selected as part of the allotment of said Anna G. McNabb. That said court entered an order authorizing said sale, and, pursuant to such order, the land was sold by said guardian to the defendant, to whom a deed was made, and the sale and deed afterwards approved by said court.

It is then alleged that said order, sale, and deed were and are void for want of jurisdiction of said county court to authorize the same; that the defendant has entered upon said premises, and is drilling an oil and gas well thereon preparatory to removing the oil and gas from said premises and appropriating the same to its own use, to the great damage and irreparable injury to the complainant and said Cherokee Tribe of Indians. A decree is prayed adjudging said guardian's deed to be void, and restraining the defendant from drilling for or removing any of the oil or gas from said premises, and from selling or otherwise exercising any control over the same.

A demurrer to the bill for want of equity, and lack of capacity of the United States to maintain the suit, was overruled.

The defendant then answered, averring the due enrollment of the minor, Anna G. McNabb, as a citizen and member of the Cherokee Nation, the allotment to her as such of said tract of land, the validity of the guardian's sale and deed, and that it is the full and absolute owner of said property. The answer also alleges that defendant has proposed to complainant to enter into a bond sufficient to protect the complainant and said Cherokee Nation to the extent of the amount it paid for the land, to wit, $4,250, and for such reasonable royalty as

would be due the owner of the land during the pendency of the suit for the gas it takes therefrom. in the event that it shall be adjudged that said Anna G. McNabb was not entitled thereto; and it now renews said offer.

The proofs adduced upon the hearing of the application for the preliminary injunction show without dispute:

That Anna G. McNabb, an Indian girl of one-sixteenth Cherokee Indian blood, born August 9. 1903, was on June 14, 1906, enrolled as of March 4, 1906, as a citizen or member of the Cherokee Nation under the provisions of section 2 of the act of Congress, approved April 26, 1906 (34 Stat. 137, c. 1876), entitled: "An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory." and for other purposes, which enrollment was duly approved by the Secretary of the Interior January 24, 1907. On February 6th following Mary E. McNabb, the mother of said minor, made formal application (which was accompanied with a certificate showing that said minor had been duly enrolled as a citizen of the Cherokee Nation) to the Commission to the Five Civilized Tribes for an allotment to said minor of the land in question as a part of the allotment in severalty to which she as such member was entitled, designating 20 acres of said land as a homestead. No certificate of the allotment of the tract was issued by the commission, and upon the application or the record thereof .appear the words: "Held pending Dept. instructions of February 21, 1907." On October 18, 1907, a contest of this allotment or selection of the land for Anna G. McNabb was filed before the commission by the father and natural guardian of Esther Miller, a minor. This contest was decided by the commission April 30, 1910, as follows:

"The acting commissioner renders his decision herein, holding that the land in controversy be and remain a portion of the allotment selection of Anna G. McNabb the minor contestee, subject to her final enrollment as a citizen of the Cherokee Nation under the act of Congress approved April 26. 1906."

No appeal was taken from this decision, and on May 31, 1910, the case was closed, and the chief clerk of the Cherokee land office notified on June 21, 1910, of the proceedings, and that the case had been closed by the commission.

On May 23, 1910, the county court of Washington county, Okl., exercising probate jurisdiction, upon application of Sanford McNabb, the father and guardian of said minor Anna G. McNabb, ordered a sale of said premises, at which sale made pursuant thereto the defendant, Henry Gas Company, a corporation, purchased said premises for the sum of $4,250, which sale and deed were on June 20, 1910, reported to, and duly approved by, said county court. Afterwards the defendant entered upon said land and drilled a producing-gas well thereon preparatory to removing the gas therefrom. Within eight months prior to its purchase of the land the defendant drilled two wells within 200 feet of the premises, and others drilled nine other producing wells within a distance of 200 to 1,600 feet of said premises, the whole of an approximate daily capacity of more than 1,000,-000,000 cubic feet of gas. That during said period of eight months

approximately 10,000,000 cubic feet of gas per day was actually produced and sold from five of said wells; and at the time of the hearing approximately 25,000,000 cubic feet per day were actually produced and sold therefrom; between 10,000,000 and 15,000,000 cubic feet thereof being from the two wells so drilled by the defendant. That such wells drained from the gas deposits upon the land in question, and in time would completely drain all of such deposits therefrom unless offset wells are drilled upon the premises to prevent such drainage. That the gas field of which said tract is a part will be entirely drained of all of its gas deposits, of sufficient value for commercial use, within five to eight years from the date of the hearing of the application for the preliminary injunction.

Upon these facts the Circuit Court granted a preliminary injunction against the defendant as prayed in the bill; and the sole question for determination is, Was it rightly granted?

[1] The granting of or refusal to grant a preliminary injunction rests in the sound judicial discretion of the court; but it is a cardinal principle of equity jurisprudence that it will not be granted unless the right to it is clear, the injury impending, and threatened so as to be averted only by the preventive process of injunction (Truly v. Wanzer et al., 5 How. 141, 142, 12 L. Ed. 88; St. Louis Street Flushing Machine Co. v. Sanitary Flushing Co., 161 Fed. 725–728, 88 C. C. A. 585), or the case is such that the status quo should be maintained until the final hearing (City of Newton v. Levis, 79 Fed. 715–718, 25 C. C. A. 161; Denver & R. G. R. R. Co. v. United States, 124 Fed. 157–161, 59 C. C. A. 579).

The act of Congress, approved July 1, 1902, entitled "An act to provide for the allotment of the lands of the Cherokee Nation, and for other purposes" (Act July 1, 1902, c. 1375, 32 Stat. 716), provides for the distribution of the tribal property of that nation equally among its members (except a portion thereof reserved for other purposes) and a dissolution of the tribal government; that the Commission to the Five Civilized Tribes, commonly called the Dawes Commission, shall cause a roll of the citizens of the Cherokee Nation to be made as of September 1, 1902, upon which the names of all persons then living and entitled to enrollment upon that date shall be placed; that an allotment in severalty of the tribal lands of the nation (except those reserved) shall be made to each citizen so enrolled as soon as practicable after the approval by the Secretary of the Interior of such enrollment; that no child born after September 1, 1902, shall be entitled to enrollment or to participate in such distribution; and that the tribal government of the Cherokee Nation shall not continue longer than March 4, 1906. It also provides that each member of the tribe may select his allotment so as to include his improvements; that selections for minors may be made by the father or mother, if citizens, or by a guardian.

As the minor child, Anna G. McNabb, was not born until August 9, 1903, she was not entitled to be enrolled, or to an allotment under this act. By the act approved April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 137), the act of 1902 is amended, and in the second sec-

tion thereof it is provided: That for 90 days after the approval hereof applications shall be received for enrollment of children who were minors living March 4, 1906, whose parents have been enrolled as members of the Cherokee Tribe and others, and that allotments shall be made to the children so enrolled: "Provided, that the rolls of the tribes affected by this act shall be fully completed on or before the 4th day of March, 1907; and the Secretary of the Interior shall have no jurisdiction to approve the enrollment of any person after said date: Provided, that nothing herein shall be construed so as to hereafter permit any person to file an application for enrollment in any tribe where the date for filing applications has been fixed by agreement between said tribe and the United States." These two provisos were amended by chapter 3504, Act June 21, 1906, 34 Stat. 342, so as to read as follows:

"Provided, that nothing herein shall be construed so as to permit any person to file an application for enrollment or to be entitled to enrollment in any of said tribes, except for minors the children of Indians by blood. * * *"

[2] Under section 2 of this act the minor child, Anna G. McNabb, was enrolled as a citizen or member of the Cherokee Nation, living on March 4, 1906, whose parents were duly enrolled citizens of that nation. This enrollment was duly approved by the Secretary of the Interior January 24, 1907, and the name of said minor has never been stricken from such rolls. Who shall be enrolled as citizens or members of the nation and permitted to participate in the distribution of its property are matters to be determined by Congress, and its determination of them is not subject to review by the courts. Stephens v. Cherokee Nation, 174 U. S. 445–483, 488, 489, 19 Sup. Ct. 722, 43 L. Ed. 1041; Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 Sup. Ct. 115, 47 L. Ed. 183; Wallace v. Adams, 143 Fed. 716–723, 74 C. C. A. 540; Id., 204 U. S. 415, 27 Sup. Ct. 363, 51 L. Ed. 547. The enrollment of this minor conclusively determines her right to participate in the distribution of the tribal property of the Cherokee Nation.

The act of Congress, approved May 27, 1908 (35 Stat. 312, c. 199), provides (section 1) that from and after 60 days from its approval the status of the lands theretofore or thereafter allotted to allottees of the Five Civilized Tribes shall as regards restrictions upon alienation and incumbrances be as follows:

"All lands including homesteads of said allottees enrolled as * * * mixed blood Indians having less than half Indian blood, including minors, shall be free from all restrictions. * * *"

And in section 6, that the persons and property of the minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma, and the Secretary of the Interior may appoint local representatives, citizens of or residents within, the state of Oklahoma, who shall have power to inquire into and investigate the conduct of guardians having in charge the estates of minors, and to take such steps as they may deem·necessary to protect and preserve the property of said estates; and said representatives shall

counsel and advise all allottees, adult or minor, having restricted lands of all their legal rights with reference thereto, and at the request of any allottee having such land they shall in the name of the allottee take such steps as may be necessary, including the bringing of any suit or suits. and the prosecution and appeal thereof, to cancel and annul any deed, mortgage, or other incumbrance of any kind made or attempted to be made or executed in violation of this or any other act of Congress. This clearly indicates the present policy of Congress in dealing with the enrolled citizens of the Cherokee Nation.

[3] The demurrer to the bill challenged the right of the United States to maintain this suit. It was overruled, and the defendant answered. The answer is a waiver of the demurrer, and of the right to have the order overruling it reviewed. Basey v. Gallagher, 20 Wall. 670–679, 22 L. Ed. 452; 1 Street's Fed. Eq. § 962. But the right of the United States to maintain the suit is the foundation of its right to a temporary injunction, and may properly be considered in determining whether or not the injunction was rightly issued, or the suit can be maintained. Smith v. Vulcan Iron Works, 165 U. S. 518–524, 525, 17 Sup. Ct. 407, 41 L. Ed. 810; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485–494, 20 Sup. Ct. 708, 44 L. Ed. 856.

The decision of this court in United States v. Allen, 179 Fed. 13, 103 C. C. A. 1, is relied upon by the government as authorizing it to prosecute this suit. If the facts in that case were the same as in this, that decision would, of course, rule this. In that case the conveyances involved were made before the removal of the restrictions imposed by Congress upon the alienation of the lands, and in violation of those restrictions; and the opinion of the majority shows that it was upon this ground that the right to maintain that suit was upheld. In this case the land in question was selected for this minor February 6, 1907. That the selection was properly made is not questioned. April 30, 1910, the Commission to the Five Civilized Tribes upon a contest of her right thereto adjudged "that the land be and remain a part of her allotment selection, subject to her final enrollment as a citizen of the Cherokee Nation." Her enrollment was approved by the Secretary of the Interior January 24, 1907. By section 1 of the act of May 27, 1908, the restrictions upon alienation of lands, including homesteads, allotted either before or after that date to mixed blood Indians having less than one-half Indian blood, are removed. This minor is but one-sixteenth Indian blood. In May, 1910, the land was sold to the defendant under an order of the probate court of Washington county, Okl., to whose jurisdiction the minor and her property were then subject, and the sale and the deed made pursuant thereto were duly approved by that court. If the land in question was in fact allotted to this minor and sold to the defendant upon order of the proper probate court, after the removal of the restrictions upon alienation thereof, as contended by the defendant, such facts are sufficient to distinguish the case from United States v. Allen, and the right of the government to maintain the suit is not necessarily controlled by that decision.

[4] It is not claimed in behalf of the government that this minor

is not in fact entitled to the land in question, or that it will not ultimately be conveyed to her as a part of the allotment she has selected, and to which she is entitled; but its sole contention is that the right of the Secretary of the Interior to prescribe rules under which allotments shall be made authorizes that officer to direct the commission to withhold allotments and the evidence thereof until he shall see fit to direct or make the same, and that, until so made and the certificate or patent has been in fact issued, the land remains a part of the tribal property of the Cherokee Nation and subject to the control of the United States as trustee and guardian of such property. It is true that the Secretary of the Interior may prescribe reasonable rules and regulations not inconsistent with, or contrary to, the law of Congress, under which allotments shall be made; but this does not authorize him to withhold an allotment altogether from one shown by the rolls to be entitled thereto. Morrill v. Jones, 106 U. S. 466, 467, 1 Sup. Ct. 423, 27 L. Ed. 267; Quinn v. Chapman, 111 U. S. 445–455, 4 Sup. Ct. 508, 28 L. Ed. 476; United States v. Symonds, 120 U. S. 46–49, 7 Sup. Ct. 411, 30 L. Ed. 557; Hartman v. Warren, 76 Fed. 157–162, 22 C. C. A. 30; Leecy v. U. S., 190 Fed. 289, 292, 293. The enrollment within the time required and as of the date fixed determines the right of the citizen to an allotment, and the failure beyond a reasonable time after its approval by the Secretary of the Interior to make the allotment, and issue the proper evidence thereof, cannot operate to deprive him of his right thereto, or to participate in the distribution of the tribal property. Lytle v. Arkansas, 9 How. 314, 13 L. Ed. 153; Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424; Hy-Yu-Tse-Mil-Kin v. Smith, 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039; Leecy v. U. S., 190 Fed. 289, 292, 293.

By the act of March 1, 1907, c. 2285, 34 Stat. 1028, Congress authorized William Brown and Levi B. Gritts, and David Muskrat and J. Henry Dick, in their own behalf and in behalf of all other Cherokee citizens having like interests in property of the Cherokee Nation, allotted under the act of 1902, to institute suits in the Court of Claims to determine the validity of any act of Congress passed after that act, in so far as said acts or any of them attempted to increase or extend the restrictions upon alienation, or to increase the number of persons entitled to share in the distribution of the lands and funds of said Nation beyond those enrolled for allotment as of September 1, 1902; and it was attempted to confer jurisdiction upon the Court of Claims to hear and determine said suits, with the right of appeal by either party from the decisions to the Supreme Court of the United States. Pursuant to this act Brown and Gritts, and Muskrat and Dick, instituted two separate suits in the Court of Claims to determine the validity of Acts March 11, 1904, c. 505, 33 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 638), and act April 26, 1906, as amended June 21, 1906. Upon the final hearing the Court of Claims upheld the validity of the acts and dismissed the bills (44 Ct. Cl. 137, 283), but upon appeal to the Supreme Court the decrees were reversed, upon the ground that the act of Congress authorizing such suits conferred no jurisdiction upon the Court of Claims, or the Supreme

Court on appeal, to determine their constitutional validity. Brown and Gritts v. United States, 219 U. S. 346, 31 Sup. Ct. 250, 55 L. Ed. 246.

[5] It is due to the Circuit Court to say that the decision of the Supreme Court in these cases was not made until after the granting of the temporary injunction in this case. It may be that the act of Congress authorizing those suits and the pendency of them influenced to some extent the granting of the injunction by the Circuit Court. Be this as it may, we are of opinion that upon the allegations of the pleadings and from the preliminary proofs the right of the complainant to maintain this suit and to a preliminary injunction against the defendant are not so clear as to authorize its issuance, especially in view of the proffered security of the defendant to indemnify the complainant and the Cherokee Nation against such damages as may be caused by its occupancy of the land, or the removal of the gas and oil deposits therefrom pending the suit. Though the matter is before us only upon appeal from the order granting the preliminary injunction, we might if satisfied that the government could not prevail upon the final hearing, now order that the bill be dismissed for want of equity. Smith v. Vulcan Iron Works, 165 U. S. 518–524, 525, 17 Sup. Ct. 407, 41 L. Ed. 810; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485–494, 20 Sup. Ct. 708, 44 L. Ed. 856; Harriman v. Northern Securities Co., 197 U. S. 244–287, 25 Sup. Ct. 493, 49 L. Ed. 739.

Inasmuch as other facts may be disclosed upon the final hearing, we will not at this time order the bill to be dismissed, or express any opinion upon the merits of the main controversy between the parties, but will permit them to submit their proofs in the ordinary way as upon the final hearing.

Ordinarily the injunction would not have issued except upon requiring security to indemnify the defendant against all damages it might sustain because of its wrongful issuance. But such security could not rightly have been exacted of this complainant. The preliminary proofs show that the land is being drained of large quantities of its gas deposits by the wells drilled upon the adjacent lands by the defendant and others, and that within a period of five to eight years it will be drained by such wells of all such deposits of sufficient value for commercial use, unless offset wells are drilled upon the land to prevent such drainage. The land is thus liable to be deprived of much, if not all, of its gas deposits pending this litigation, and whomsoever may be ultimately adjudged to be its owner may suffer irreparable loss. The cause will therefore be remanded to the Circuit Court, with directions to accept adequate security in the name of the complainant as offered by the defendant to indemnify the complainant and the Cherokee Nation against all damages to them that may be caused by the defendant to the land pending the suit; and, if said security is given to the satisfaction of the court, it will vacate the temporary injunction; otherwise it will continue the same in force until the final hearing.

It is ordered accordingly.