## PHILLIPS v. UNITED STATES GRAIN CORPORATION.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 107.

1. **Army and navy ⬦15—Acceptance of gold for carriage discretionary with naval officer.**

Navy Regulations, art. 1510, concerning the transportation of gold on a navy vessel, grants a wide discretion to the commanding officer, and the contractual obligation arising from the receipt and transportation is between the shipper and the officer; the officer not being obliged to carry any gold, silver, or jewels that might be tendered.

2. **Army and navy ⬦2—Regulations of navy have effect of law.**

By virtue of Rev. St. § 1547 (Comp. St. § 2805), the regulations of the navy have the force and effect of law.

3. **Army and navy ⬦13(2)—Shipper, placing gold on naval vessel, impliedly agrees to pay compensation provided.**

A shipper, placing gold on a United States naval vessel for transportation, impliedly agrees to pay the compensation provided for in Navy Regulations, art. 1510.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Army and navy ☞13(2)—Secretary of the Navy could not suspend navy regulation providing for compensation to officer of vessel carrying gold.**

The directions of Navy Regulations, art. 1510, providing for compensation to officer of vessel transporting gold, is mandatory, and the Secretary of the Navy is without authority to suspend it, so as to prevent a naval officer carrying gold from recovering compensation therefor without the approval of the President, having no authority to diminish the officer's compensation as established by law under Rev. St. § 1547 (Comp. St. § 2805).

5. **Army and navy ☞2—Alteration of naval regulations must have actual approval of President.**

Rev. St. § 1547 (Comp. St. § 2805), providing that naval regulations may only be altered with the approval of the President, implies an actual, as distinguished from an implied, approval, in view of Navy Regulations, art. 901.

6. **Army and navy ☞13(2)—Officer of vessel held not to have waived right to compensation for transporting gold.**

Naval officer, who refused to accept release from responsibility for gold transported by him on his vessel, did not waive his right to compensation, under Navy Regulations, art. 1510, by stating, "I take full responsibility for the transportation of the gold to the United States," as it is only where the party is deceived in the belief that the assertion of right to compensation is abandoned that it can be successfully urged there has been a waiver.

7. **United States ☞125—United States Grain Corporation liable to naval officer for compensation for transporting gold.**

United States Grain Corporation, organized under an executive order of August 14, 1917, under powers vested in the President under Act Cong. Aug. 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛r), was not a governmental agency, though the government was the principal stockholder, and it was liable to an officer of a naval vessel for compensation for transporting gold the same as any other private corporation, under Navy Regulations, art. 1510.

In Error to the District Court of the United States for the Southern District of New York.

Action by Wallace B. Phillips against the United States Grain Corporation. Judgment for defendant, and plaintiff brings error. Reversed.

Hatch & Clute, of New York City (Edward S. Hatch, Harold N. Whitehouse, and Maurice W. Clarke, all of New York City, of counsel), for plaintiff in error.

Shattuck, Glenn & Ganter, of New York City (Garrard Glenn, William B. Walsh, and De Witt C. Jones, Jr., all of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error was the commanding officer of the United States ship Laub, of the United States Navy. The defendant in error is a Delaware corporation, the United States government being its principal stockholder.

By an act of Congress approved August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛r), the President was vested with extraordinary powers in the matter of the conservation, control, and distribution of food products and fuel. This pronounce-

ment was primarily for the successful prosecution of the war, for the support and maintenance of the army, to insure an adequate supply and distribution of foodstuffs and to facilitate the movements of food and fuel; also to prevent hoarding. By an executive order the United States Food Administrator was created. The powers conferred upon the President by the Food and Fuel Act were by him vested in the United States Food Administrator. The President was authorized to purchase and sell foodstuffs from time to time for cash. By an executive order of August 14, 1917, it was deemed expedient and necessary to organize a corporation. The defendant in error was then organized. The corporation was not delegated to utilize any department or agency of the government, nor was it directed to avail itself of any department or agency. It was authorized to act in the manner customarily followed in the trade. By its certificate of incorporation it was provided, among other things, as follows:

"To do any and all of the things herein set forth to the same extent as natural persons might or could do, and, in general, to have and to exercise all the powers conferred by the laws of Delaware upon corporations formed under the laws hereinafter referred to."

It was created as a trading corporation. It sought and procured all the rights and powers of corporations similarly organized. Nothing either in the Food and Drug Act (Comp. St. §§ 8717–8728), the executive order, or the certificate of incorporation granted to it any special rights, privileges, or exemptions. In August, 1919, the defendant in error entered into a written agreement with the government of Bulgaria, whereby the defendant in error agreed to sell and deliver to the government of Bulgaria 14,000 tons of wheat flour, the value to be paid by Bulgaria in United States currency. Bulgaria had no credit in the United States to pay for the wheat and the gold, which was deposited as security pursuant to the contract, amounted to $5,170,000. It became the property of the defendant in error, and in order to transport it to New York from Constantinople, Turkey, the defendant in error requested its transportation on board the United States ship Laub. Prior thereto, Admiral Knapp, the ranking United States naval officer in South European waters, cabled the Secretary of the Navy that the Relief Administration requested that the mandatory provisions of article 1015 of the Navy Regulations be suspended as the defendant in error desired to ship $5,000,000 gold to the United States. In answer thereto, the Secretary cabled Admiral Knapp that the department suspended the mandatory provisions on condition that the commanding officer of the United States Navy be released from all responsibility. The Secretary of the Navy's cablegram was communicated to the plaintiff in error before the receipt of the gold on board the Laub.

After the gold had been taken on board, Maj. Galbraith delivered to him a document purporting to be a release by the United States Food Administration, releasing the plaintiff in error and the United States Navy from all responsibility. After reading the document, the plaintiff in error gave to Maj. Galbraith a document in which he refused to accept the proffered release, and a demand was thereupon made by him for the statutory freight charges fixed by the regulations for the

transportation of gold. The plaintiff in error received from Admiral Bristol government order No. 46, directing him to proceed with the Laub to New York, and authorizing him, in accordance with article 8 of the Articles of the Government of the Navy (Comp. St. § 2969) and article 1510 of the Navy Regulations, to receive on board and to transport to New York the gold in question. The ship with the gold arrived in New York on October 6, 1919, where it was delivered, accepted, and receipted for. Before the delivery of the gold, the plaintiff in error demanded the usual percentage of freight, which was 1 per cent. of the value of the gold, but payment thereof was refused.

[1-5] The theory of plaintiff in error's case is that by virtue of section 1624 of the United States Revised Statutes (Comp. St. § 2961) and article 1510 of the Regulations of the Navy, he was authorized to receive on board gold, for freight or safe-keeping, and was entitled to compensation by reason of the terms of naval regulation 1510. Section 1624 of the Revised Statutes forbids the receipt by a member of the navy of freight, goods, or merchandise for sale or traffic, except gold, silver, or jewels on his vessel, without authority from the President or Secretary of the Navy. Navy Regulations, art. 1510,[1] provides for authority to carry gold and the payment of a commission, among others, to the commanding officer of the ship for the safe carriage of gold, silver, or jewels. The regulation does not impose any obligation to carry any gold, silver, or jewels that might be tendered, but grants authority to accept such gold, and, when such is carried, a liability for such carriage is imposed. Article 1510 grants a wide discretion to a commanding officer of the naval vessel concerning the receipt on board of private rights of gold, silver, or jewels, and the contractual obligation arising from the receipt and transportation of such gold is between the shipper and the officer. Cartas v. United States, 250 U. S. 545, 40 Sup. Ct. 42, 63 L. Ed. 1133.

The regulations of the Navy have the force and effect of law by virtue of section 1547 of the United States Revised Statutes (Comp. St. § 2805). It is there provided that orders, regulations, and instructions issued by the Secretary of the Navy, prior to July 14, 1862, with such alterations as he may have adopted with the approval of the President, shall be recognized as regulations of the Navy, subject to the alterations adopted in the same manner as the Navy Regulations and have full force and sanction of the law. Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601. The shipper placing gold on board a naval vessel for transportation impliedly agrees to pay the compensa-

---

[1] "When gold, silver or jewels shall be placed on board of any ship for freight or safe keeping, as provided by the articles for the government of the navy, the commanding officer shall sign bills of lading for the amount and be responsible for the same. The usual percentage shall be demanded from the shippers, and its amount shall be divided as follows: One-fourth to the commander in chief, one-half to the commanding officer of the ship; one-fourth to the Navy Pension Fund. To entitle the commander in chief to receive any part of the amount, he must have signified to the commanding officer of the ship, in writing his readiness to unite with him in the responsibility for the care of the treasure or other valuable. Where a commander in chief does not participate in a division, two-thirds shall inure to the commanding officer of the ship and the remainder to the pension fund."

tion provided for in the Navy Regulations. There is no navy regulation which admits of an exception, and neither states nor suggests an instance where service may be availed of without compensation. The directions contained therein are mandatory. The gold having been shipped, unless a lawful order suspending the provisions of section 1510 as to compensation was made by the Secretary of the Navy, the plaintiff in error should have prevailed below.

Section 1547 of the United States Revised Statutes provides that the Secretary of the Navy may, with the approval of the President, alter a navy regulation. But Congress did not intend to confer authority upon the Secretary of the Navy to diminish an officer's compensation as established by the law. United States v. Symonds, 120 U. S. 46, 7 Sup. Ct. 411, 30 L. Ed. 557. In the Symonds Case it was held that Congress did not intend to confer authority upon the Secretary of the Navy to diminish an officer's compensation as established by law by declaring that to be shore service which was, in fact, sea service. The authority of the Secretary to issue orders and instructions with the approval of the President in reference to matters connected with the naval establishment is subject to the condition, necessarily implied, that they must be consistent with the statutes which have been enacted by Congress in reference to the Navy. The Secretary may prescribe reasonable rules and regulations, not inconsistent with or contrary to the laws of Congress. Henry Gas Co. v. United States, 191 Fed. 132, 111 C. C. A. 612. Regulations must be confined within the limitations of such power, authority, and purpose granted by Congress. Meads v. United States, 81 Fed. 684, 26 C. C. A. 229.

In the instant case the Secretary of the Navy attempted to suspend article 1510, in so far as it provided compensation to be paid for services to be rendered. There is nothing in the act or regulation indicating that the right to recover compensation is dependent upon the presence or absence of an order to transport the gold. Provision for compensation is unqualified. Section 1547 of the Revised Statutes provides that naval regulations may only be altered with the approval of the President. This implies an actual, as distinguished from an implied, approval. United States v. Hammers, 221 U. S. 220, 31 Sup. Ct. 593, 55 L. Ed. 710; United States v. Hermanos, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821.

Article 901 of the Navy Regulations (chapter 10) provides:

"Navy Regulations.—These shall include all regulations requiring the original approval of the President of the United States, and consequently the same approval of any change."

This record does not disclose that the President approved the attempted suspension by the Secretary of the Navy. The cablegram of Admiral Knapp stated:

"Serial No. Mission 555. Relief Administration desires ship about five millions gold to United States from Constantinople on board a destroyer and is willing to keep gold insured and release captain from all responsibility except such as is usually incumbent for care of public property. Under circumstances will department suspend mandatory provisions of article 1510, Navy Regulations, including percentage charge and direct that shipment be received for transportation as desired."

And the answer of the Secretary was as follows:

"Your Mission 555 approved. Department suspends mandatory provisions article 1510, Navy Regulations, including percentage charges upon commanding officer with release for himself and the United States government from all responsibility as per your Mission 555. Papers must be certified and signed by proper officials."

The plaintiff in error, when handed the document by Maj. Galbraith whereby he released the plaintiff in error and the United States government from all responsibility covering the shipment of gold, and reciting that the mandatory provision of article 1510, Navy Regulations, was suspended, stated in writing:

"1. You are hereby informed that 1 cannot accept your release (reference a) from responsibility covering shipment of approximately five million dollars ($5,000,000) gold to the United States on this vessel.

"2. The gold was received from the commanding officer, U. S. S. Galveston, to whom I have given receipt for same and I take full responsibility for the transportation of the gold to the United States.

"3. Copy of this letter furnished to Senior U. S. Naval Officer, Turkey."

[6] The movement order read in accordance with article 8 of the Articles for the Government of the Navy of the United States (section 1624, Revised Statutes; article 1510, U. S. Navy Regulations 1913) "you are authorized to receive on board the vessel under your command." We do not think that the plaintiff in error, having read the document handed him by Maj. Galbraith, and having announced, "I cannot accept your release," and "I take full responsibility for the transportation of the gold to the United States," waived any of his rights under the statutes or Naval Regulations. What he said and did indicated no intention to relinquish his rights in the premises, nor was the defendant in error led to believe that the plaintiff in error had abandoned his rights in the premises. It is only where the party is deceived in the belief that the assertion of right to compensation is abandoned that it can be successfully urged there had been a waiver. Rice v. Fidelity & Deposit Co., 103 Fed. 427, 43 C. C. A. 270.

[7] The defendant in error is not a governmental agency, although the United States was the principal stockholder. The government created this agency, but the corporate responsibility is that of a private corporation. Panama Ry. Co. v. Curran, 256 Fed. 768, 168 C. C. A. 114.

We think there was no lawful suspension of the obligation to pay which is imposed upon the defendant in error pursuant to article 1510 of the Naval Regulations and that the plaintiff in error having transported the gold as the commanding officer of the ship Laub is entitled to recover pursuant to the statute and the Naval Regulations.

Judgment reversed.