**WESTERN UNION TELEGRAPH CO. v. INDUSTRIAL COMMISSION OF MINNESOTA et al.**

**YERKA et al. v. WILLIAMS, Chairman of Industrial Commission, et al.**

Nos. 3014, 3015.

District Court, D. Minnesota, Fourth Division.

Aug. 27, 1938.

Henry H. Flor and Victor P. Reim, both of New Ulm, Minn., and William E. MacGregor, Guesmer, Carson & MacGreg-

or, and Donald F. Pratt, all of Minneapolis, Minn., for plaintiffs Yerka and Manderfeld.

Coursolle, Preus & Maag, of Minneapolis, Minn., for plaintiff Western Union Telegraph Co.

William S. Ervin, Atty. Gen. of Minnesota, and John A. Pearson, Asst. Atty. Gen. of Minnesota, for defendants.

Sam J. Levy, of Minneapolis, Minn., for Martin Bros. Co., Northbilt Manufacturing Co., Robitshek-Schneider Co., Rosen and Barnes, United Garment Mfg. Co., Strutwear Knitting Co., Munsingwear, Inc., Minneapolis Knitting Works, Winget-Kickernick Co., Boulevard Frocks, Inc., D. B. Rosenblatt, Inc., Great Six Company, Liberty Garment Mfg. Co., and Liman Mfg. Co.

John A. Goldie, of Minneapolis, Minn., for Minnesota State Federation of Labor.

PER CURIAM.

The suits are in equity to enjoin the enforcement against the plaintiffs of an order of the Industrial Commission of Minnesota establishing minimum rates of wages for women and minors employed in industry in the State of Minnesota. The order complained of was made on April 25, 1938, effective July 11, 1938, and is known as "Minimum Wage Order No. 13." The plaintiffs in each of the suits, employers of women and minors in industry in the State of Minnesota, are directly affected by the challenged order. Martin Bros. Co. and others who with it seek to intervene in No. 3015 are also employers directly affected by the order. The Minnesota State Federation of Labor is an unincorporated association affiliated with the American Federation of Labor, and is composed of 650 unions in Minnesota and has a membership of some 70,000 wage earners, including women and minors directly affected by the challenged order. It desires to intervene to protect its rights and the rights of all wage earners in the State affected by the order. The defendants, as appears in the titles of the cases, are the Industrial Commission of Minnesota, its members, and the Superintendent of its Division of Women and Children.

In No. 3015 the allegations of the complaint show that the suit arises under the Constitution of the United States, and that more than $3,000 is involved, exclusive of interest and costs. The same basis for Federal jurisdiction exists with reference to No. 3014, and in that suit diversity of citizenship is alleged. It is therefore apparent that this Court has jurisdiction.

Briefly stated, the main contentions of the plaintiffs, and of the other employers (of women and minors) who seek intervention, are:

1. That the procedure followed by the Industrial Commission in establishing minimum rates of wages for women and minors employed in industry violated the due process clause of the Fourteenth Amendment to the Constitution of the United States, U.S.C.A.Const. Amend. 14.

2. That the Minimum Wage Law of Minnesota (Chap. 547, Laws of Minnesota 1913, as amended; Mason's Minnesota Statutes 1927, §§ 4210–4232; Chap. 79, Laws of Minnesota 1937; Mason's Minnesota Statutes, Suppl., § 4214) authorizes neither the procedure followed by the Commission nor the order made by it.

The plaintiff The Western Union Telegraph Company, in addition, contends that the order conflicts with an Act of Congress, namely the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.; and that, in so far as the order constitutes a regulation of the wages of its employees, it imposes an undue burden upon interstate commerce, in conflict with the commerce clause of the Constitution of the United States, U.S.C.A.Const. art. 1, § 8, cl. 3.

The defendants deny any lack of due process in the procedure followed by the Commission in establishing rates of wages, and contend that the procedure adopted by the Commission and the challenged order made by it were in conformity with State law and not in conflict with any provision of the Constitution or laws of the United States.

The questions of law upon which this Court must ultimately pass, after a trial of these causes upon their merits, are apparent. The Legislature of Minnesota, in dealing with minimum living wages for women and minors employed in industry, was dealing with a subject within its regulatory power. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330. The Legislature selected the Industrial Commission as its instrumentality to exercise the administrative judgment necessary in applying the legislative standards prescribed in

the Minimum Wage Statute. The powers and limitations of the Commission were therein defined. Whether the Commission has applied the standards set up, whether it has acted within the authority conferred upon it by the Legislature or gone beyond that power, whether its proceedings satisfy the constitutional demands of due process, "whether, in short, there is compliance with the legal requirements which fix the province of the commission and govern its action, are appropriate questions for judicial decision", and constitute questions of law which this Court is required to decide. Federal Radio Commission v. Nelson Bros. Bond & Mtg. Co., 289 U.S. 266, 276, 53 S.Ct. 627, 632, 633, 77 L.Ed. 1166. All questions arising under the Constitution of the United States and under the laws of the State are before this Court for decision. Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 391, 58 S.Ct. 334, 337, 82 L.Ed. 319.

■ Upon the applications for preliminary injunctions, we are not required to finally determine the issues of law tendered by the pleadings.

■ The granting or denial of a temporary injunction pending final hearing is within the sound judicial discretion of the trial court, and its action will not be disturbed upon appeal unless contrary to some rule of equity or the result of an improvident exercise of judicial discretion. Prendergast v. New York Tel. Co., 262 U. S. 43, 50, 43 S.Ct. 466, 469, 67 L.Ed. 853; Meccano, Ltd., v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 465, 64 L.Ed. 822; Love et al. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 185 F. 321; Security Metal Products Co. v. Kawneer Co., 8 Cir., 14 F. 2d 569; Special School Dist. v. Speer, 8 Cir., 75 F.2d 420; Pratt v. Stout, 8 Cir., 85 F.2d 172, 176.

■ If the questions presented by a suit for an injunction are grave and difficult and the injury to the moving party will be certain, substantial, and irreparable if the motion for a temporary injunction is denied and the final decision is favorable, while if the motion is granted and the decision is unfavorable the inconvenience and loss to the opposing party will be inconsiderable or he may be protected by a bond, the injunction usually should be granted. City of Newton v. Levis, 8 Cir., 79 F. 715, 718; Denver & R. G. R. Co. v. United States, 8 Cir., 124 F. 156,

160; Henry Gas Co. v. United States, 8 Cir., 191 F. 132; Massie et al. v. Buck, 5 Cir., 128 F. 27, 31, 32; King Lumber Co. v. Benton, 5 Cir., 186 F. 458, 459; Love et al. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 185 F. 321, 331; Security Metal Products Co. v. Kawneer Co., 8 Cir., 14 F.2d 569, 575; Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972; Pratt v. Stout, 8 Cir., 85 F.2d 172, 176, 177.

■ When the nature of the questions which arise upon a suit for an injunction makes them a proper subject for deliberate examination, and if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined. Hadden v. Dooley, 2 Cir., 74 F. 429, 431; Blount v. Societe Anonyme du Filtre, etc., 6 Cir., 53 F. 98, 101; Pratt v. Stout, 8 Cir., 85 F.2d 172, 177. See, also, Virginian Ry. Co. v. United States, 272 U.S. 658, 673, 47 S.Ct. 222, 228, 71 L.Ed. 463.

Do these suits present questions which are grave and difficult, which require deliberate examination, and which could better be determined after a trial upon the merits?

The first, and perhaps the most important, question presented is whether the procedure followed by the Commission in arriving at its Order No. 13 was in accordance with the constitutional requirement of due process.

It appears that for many years prior to Order No. 13, the Minimum Wage Law of Minnesota, in so far as it applied to adult women employed in industry, was virtually in suspension; this because of the decision of the Supreme Court of the United States of April 9, 1923, in Adkins v. Children's Hospital, 261 U.S. 525, 43 S. Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238, which held that the Minimum Wage Law of the District of Columbia was unconstitutional. When that Court overruled the Adkins Case, on March 29, 1937, in West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330, the Minnesota Industrial Commission undertook to establish minimum rates of wages for both women and minors employed in all of the industries of the state of Minnesota. The procedure followed by the Commission was, in substance, this:

In or about June, 1937, it appointed an Advisory Board, so called, consisting of eleven members, five of whom were suggested by the Minnesota Employers' Association and five by the Minnesota State Federation of Labor, the eleventh member being chosen by the other ten. This Advisory Board (which, it is now conceded, is not such an advisory board as the statute authorized, but did not require), apparently after must study and investigation but without holding public hearings, made its report and recommendation to the Commission. The Commission, after giving published notice, held a hearing on April 11, 1938, with respect to minimum wages for women and minors of ordinary ability and for learners and apprentices, at which it appears that employers, employees and other interested persons presented themselves and made statements as to wages, profits and other pertinent matters. At this hearing, no evidence by or on behalf of the Commission was introduced; the factual or evidentiary basis for the order which the Advisory Board recommended and which the Commission proposed to make, and subsequently did make, was not disclosed; and no witnesses were permitted to be sworn or examined, and no documentary evidence was introduced. Those present who desired to be heard were limited by the Chairman of the Commission to brief statements of the reasons why they were opposed to or in favor of the proposed order fixing minimum wages. The lack of time of the Commission to hear at length from all interested parties was stressed by the Chairman.

The meaning of the due process clause of the Fourteenth Amendment with respect to "the action of administrative agencies * * * with broad control over activities which in their detail cannot be dealt with directly by the Legislature" (Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 775, 999, 82 L.Ed. 1129), with respect to the procedure of "regulatory commissions" (Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 304, 57 S. Ct. 724, 730, 81 L.Ed. 1093), and with respect to "the maintenance of proper standards on the part of administrative agencies in the performance of their quasijudicial functions" (Morgan v. United States, supra, 58 S.Ct. 773, at page 778), has recently been stated and explained by the Supreme Court of the United States in a number of cases. St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319; Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129. No useful purpose would be served in attempting to restate what that Court has said with reference to the constitutional requirements of due process; but attention may properly be directed to some of the language used by Mr. Justice Cardozo in the opinion of the Court in the case of Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, which involved the regulation of telephone rates by a commission of the State of Ohio:

"The company protested. It asked disclosure of the documents indicative of price trends, and an opportunity to examine them, to analyze them, to explain and to rebut them. The response was a curt refusal. Upon the strength of these unknown documents refunds have been ordered for sums mounting into millions, the Commission reporting its conclusion, but not the underlying proofs. The putative debtor does not know the proofs today. This is not the fair hearing essential to due process. It is condemnation without trial." Page 300 of 301 U.S., 57 S.Ct. page 728.

"From the standpoint of due process— the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out. When price lists or trade journals or even government reports are put in evidence upon a trial, the party against whom they are offered may see the evidence or hear it and parry its effect. Even if they are copied in the findings without preliminary proof, there is at least an opportunity in connection with a judicial review of the decision to challenge the deductions made from them. The opportunity is excluded here. The Commission, withholding from the record the evidential facts that it has gathered here and there, contents itself with saying that in

gathering them it went to journals and tax lists, as if a judge were to tell us, 'I looked at the statistics in the Library of Congress, and they teach me thus and so.' This will never do if hearings and appeals are to be more than empty forms." Pages 302, 303 of 301 U.S., 57 S.Ct. page 729.

"What the Supreme Court of Ohio did [in sustaining the order of the Commission] was to take the word of the Commission as to the outcome of a secret investigation, and let it go at that. 'A hearing is not judicial, at least in any adequate sense, unless the evidence can be known.' West Ohio Gas Co. v. Public Utilities Commission (No. 1), supra, 294 U.S. 63, at page 69, 55 S.Ct. 316, 319, 79 L.Ed. 761. Cf. Interstate Commerce Commission v. Louisville & N. R. Co., 227 U.S. 88, 91, 33 S.Ct. 185, 57 L.Ed. 431; United States v. Abilene & Southern Ry. Co., 265 U.S. 274, 288, 44 S.Ct. 565, 569, 68 L.Ed. 1016; Chicago Junction Case, 264 U.S. 258, 263, 264, 265, 44 S.Ct. 317, 318, 319, 68 L.Ed. 667." Page 304 of 301 U.S., 57 S.Ct. page 730.

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. West Ohio Gas Co. v. Public Utilities Commission (No. 1), supra, 294 U.S. 63, at page 70, 55 S.Ct. 316, 320, 79 L.Ed. 761; West Ohio Gas Co. v. Public Utilities Commission (No. 2), 294 U.S. 79, 55 S.Ct. 324, 79 L.Ed. 773; Los Angeles Gas & Electric Corporation v. Railroad Commission, 289 U.S. 287, 304, 53 S.Ct. 637, 643, 77 L.Ed. 1180. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' (St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.Ct. 720, 735, 80 L.Ed. 1033) of a fair and open hearing be maintained in its integrity. Morgan v. United States, 298 U.S. 468, 480, 481, 56 S.Ct. 906, 911, 80 L.Ed. 1288. Interstate Commerce Commission v. Louisville & N. R. Co., supra. The right to such a hearing is one of 'the rudiments of fair play' (Chicago, M. & St. P. Ry. Co. v. Polt, 232 U.S. 165, 168, 34 S.Ct. 301, 58 L.Ed. 554) assured to every litigant by the Fourteenth Amendment as a minimal requirement. West Ohio Gas Co. v. Public Utilities Commission (No. 1), (No. 2), supra; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 682, 50 S.Ct. 451, 454, 74 L.Ed. 1107. Cf. Norwegian Nitrogen Products Co. v. United States, supra [288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796]. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." Pages 304, 305 of 301 U.S., 57 S.Ct. page 730.

We also take the liberty of calling attention to some of the language used by Mr. Chief Justice Hughes in the recent case of Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129:

"The first question goes to the very foundation of the action of administrative agencies intrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the Legislature. The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the Legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,' essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.'" Page 775 of 58 S.Ct.

"But a 'full hearing'—a fair and open hearing—requires more than that [an understanding of the purport of a report made to the Secretary of Agriculture by his subordinates]. The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasijudicial proceeding aimed at the control of their activities are entitled to be fairly advised.

of what the Government proposes and to be heard upon its proposals before it issues its final command." Page 776 of 58 S.Ct.

"The maintenance of proper standards on the part of administrative agencies in the performance of their quasijudicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." Page 778 of 58 S.Ct.

It is possible that, for some reason which is not now apparent to us and to which our attention has not as yet been directed, the Minnesota Industrial Commission, in fixing minimum wage rates for women and minors employed in industry, is not such a regulatory board or administrative agency performing quasi-judicial functions as is subject to the requirements of the due process clause of the Constitution of the United States, as those requirements have been stated by the Supreme Court in the cases to which we have referred. The defendants have pointed to the decisions of the Supreme Court of Minnesota sustaining the Minnesota Minimum Wage Law and certain orders made pursuant to it (Williams v. Evans, 139 Minn. 32, 165 N.W. 495, 166 N.W. 504, L.R.A.1918F, 542; G. O. Miller Telephone Co. v. Minimum Wage Commission, 145 Minn. 262, 177 N.W. 341), in which it was held by that court that the delegation of authority to the Commission to establish a minimum wage for women and minors in industry did not constitute an unconstitutional delegation of legislative authority, and that the Commission is a mere administrative agency without legislative or judicial power. The defendants also argue that the procedure followed by them is in conformity with the law of the State. It is true, of course, that a judgment of the highest court of a State as to the meaning and effect of the State Constitution is decisive and controlling everywhere. Highland Farms Dairy v. Agnew, 300 U.S. 608, 613, 57 S.Ct. 549, 551, 81 L.Ed. 835. It is also true that the question of how State power shall be distributed among the various governmental branches of the State is usually for the State to determine. Highland Farms Dairy v. Agnew, supra, page 612, 57 S.Ct. page 551. It is too plain for argument, however, that neither State legislation, State decisions, nor Congressional action can modify or affect the requirements of due process under the Fourteenth Amendment of the Federal Constitution or shelter a governmental officer, board or commission from those requirements. Obviously, a State or Federal statute might require more in the way of due process than is required by the Fourteenth Amendment, but it could not, in any event, excuse less. In Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 775, 999, 82 L.Ed. 1129, the Chief Justice points out that, by making action of the Secretary of Agriculture, under the Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq. depend upon a "full hearing", Congress recognized and emphasized the constitutional requirement of due process. In Morgan v. United States, 298 U.S. 468, on page 477, 56 S.Ct. 906, on page 910, 80 L. Ed. 1288, the Court said relative to the same Act: "Nor is it necessary to go beyond the terms of the statute in order to consider the constitutional requirement of due process as to notice and hearing. For the statute itself demands a full hearing, and the order is void if such a hearing was denied."

To determine what constitutes a minimum living wage for women and minors employed in Minnesota under the standards fixed by the Minimum Wage Law of the State of Minnesota would seem to call for something more than mere administrative or executive action. It would seem to require the gathering and weighing of evidence and the exercise of judgment in determining important, difficult, and controversial questions of fact. Unless the action of the Commission in this regard is executive merely, its procedure must include a full hearing, and there must be evidence. Morgan v. United States, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288. To our minds, the question whether the procedure followed by the Commission accorded with the requirements of due process is a grave and difficult question. Unless, upon the trial of these cases, the defendants can establish that the procedure followed by the Commission met the requirements of due process or that, for some reason, such require-

ments were not applicable to it, we perceive no way in which the challenged order can be sustained under the decisions of the Supreme Court of the United States to which we have called attention and which this Court is bound to follow.

The questions whether the procedure adopted by the Commission and whether its order are in conformity with legislative standards, we think, also present difficulties. We are satisfied that those questions can better be determined after trial, and we refrain from discussing them in connection with these applications for temporary injunctions.

The present status, as we understand it, is that the plaintiffs and the employers who have sought intervention have not complied with Order No. 13, and are subject to the penalties provided by the statute for noncompliance. It sufficiently appears that if the enforcement of the order is not enjoined, the plaintiffs will suffer substantial injury and will be required to readjust their relations with their employees receiving less than the wages required by the order, or to cease business. The only persons who will be adversely affected by the granting of a temporary injunction to maintain the present status until these cases can be tried upon the merits, will be those employees of the plaintiffs and of the employers seeking intervention who are receiving less than the wages established by the Commission.

Our conclusion is that the applications for temporary injunctions should be granted, upon condition that each employer, party to these suits, who or which is protected by the injunctions granted, shall give a sufficient bond so conditioned as to insure that the employees of such employer who are receiving less wages than those established by Order No. 13, will be paid the full difference between what they shall receive and what they would have received under Order No. 13, if it shall eventually be held that that order was a valid order.

The application of the employers presently seeking intervention is granted. As already pointed out, under the allegations of their complaint, they are all directly affected by the challenged order and are in no substantially different position than the plaintiffs.

The application of the Minnesota State Federation of Labor to intervene is also granted, on condition that it conform its intervention to the requirements of Equity Rule 37, 28 U.S.C.A. following section 723, which provides: "Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding." This rule has the effect of a statute, and this Court may not violate or waive it. Under the rule, one may not intervene and attack the jurisdiction of the court. See Whittaker v. Brictson Mfg. Co., 8 Cir., 43 F.2d 485, 489, 490, and cases cited.

It is important that these suits should be tried at as early a date as possible. They will be set down for trial at the September Term of this Court.

The plaintiffs and the employers who are hereby permitted to intervene may, upon reasonable notice to the defendants, present to the Court findings of fact, conclusions of law, and proposed interlocutory decrees in conformity with this opinion.